ABE GOLDSTEIN, Appellant, v. NATHAN E. MUNDON et al.,
Appellees.

MORTGAGES: Foreclosure—Sale—Rents and Profits During Redemption. The tenant of a mortgagor of real estate for the year for redemption from foreclosure sale who has paid his rent in advance is entitled to (1) all crops raised by him on the premises and matured by the time foreclosure deed is issued, and (2) all crop shares due him from his subtenants and likewise matured by the time said deed is issued. (See Book of Anno., Vol. 1, Sec. 11774, Anno. 24; Sec. 12376, Anno. 85 *et seq.*; Sec. 12713, Anno. 45 *et seq.*)

MORTGAGES: Foreclosure—Sale—"Matured Crops" Defined. Crops are *matured* whenever they have reached such a stage of maturity that they no longer draw sustenance from the soil.

Headnote 1: 27 Cyc. pp. 1729 (Anno.), 1731. Headnote 2: 17 C. J. p. 378.

Headnote 1: 19 R. C. L. 628, 630. Headnote 2: 19 R. C. L. 628.

*Appeal from Appanoose District Court.*—E. S. WELLS, Judge.

OCTOBER 19, 1926.

Suit in equity, praying for an injunction and other relief, whereby it is sought to establish the plaintiff's ownership of

certain corn, the same being the rental share due from the tenants of a certain farm for which the plaintiff acquired a sheriff's deed on October 1, 1923. The defendants deny the right of the plaintiff to any interest in said corn. A trial having been had upon the merits, the court dismissed the petition, and entered judgment for costs. The plaintiff appeals.—*Affirmed.*

*C. H. Elgin,* for appellant.

*H. E. Valentine,* for appellees.

EVANS, J.—The farm in question consists of 324 acres, upon which the plaintiff held a second mortgage for $5,800. The mortgagor and owner of the farm was the defendant Nathan E.

1. MORTGAGES: foreclosure: sale: rents and profits during redemption.

Mundon. The plaintiff obtained a decree of foreclosure in September, 1922, and caused execution sale to be made. Pursuant thereto, he obtained a sheriff's deed on October 1, 1923. The claim now pressed by him is for the alleged landlord's share of the certain unharvested corn standing upon the farm on the date of his acquisition of title. F. E. Mundon is the son of Nathan E. Mundon. Nathan purchased this farm from plaintiff in the year 1920. He thereafter rented the same to his son, F. E. Mundon, who entered into possession of the same and lived thereon and farmed the same for a crop-share rental for the years 1921 and 1922. It is his claim that, in the fall of 1922, after the foreclosure of plaintiff's mortgage, he rented the farm from his father by oral lease for the year 1923; that the rental was agreed on at $1,000, which he paid in February, 1923, by the execution of his note; that, long prior to October 1st, he had made a partial payment of $600 on the note to his father; that such note was thereafter transferred by his father to one Collins, to whom the son made further partial payment; that the son, F. E. Mundon, sublet about 115 acres or more of said farm to the Fenton defendants for a rent-share of the corn to be raised thereon by such defendants; that he also raised on his own part 55 acres of corn. On October 1, 1923, all this corn except 40 acres, which had been "hogged-down," was standing unharvested. Whether it was mature or not is a question in dispute between the parties. The plaintiff makes no contention adverse to the Fenton defend-

ants. He concedes that they are entitled to gather and retain their tenants' portion of the crop raised by them. He does contend that the rental share due from them belongs to him, by virtue of his sheriff's deed, as the successor in title to Nathan E. Mundon, who, as he alleges, is the real landlord. He traverses the claim of F. E. Mundon, as an alleged tenant, and denies his tenant character. He avers that he was a mere representative of his father, or that he was in partnership with him, or that he was acting in collusion with his father to defraud the plaintiff; that, at best, he was the mere assignee or grantee of his father, and could stand in no better position than his father could have stood. In substance, he contends that the claim of F. E. Mundon that he rented the farm from his father for the year 1923, is a mere pretense. In the last analysis, the real controversy is over this question, and is one of fact. The parties do not differ materially in their contentions as to the basic rules of law which govern the case.

Under his sheriff's deed, the plaintiff succeeded instanter to all the rights of his grantor in said real estate. In so far as such grantor had become a landlord, and was entitled to unaccrued rents, such unaccrued rents passed at once to the plaintiff. If any rental share of crops was due such grantor, as landlord, such rental share inured at once to the benefit of the plaintiff, and he became entitled to receive the same from the tenants, in lieu of his grantor; and this is so regardless of whether the crops were matured or unmatured. *Clark v. Strohbeen,* 190 Iowa 989; *Adams v. Beadle & Slee,* 47 Iowa 439; *Frum v. Kueny,* 201 Iowa 327.

As between the plaintiff and the tenants, however, such tenants were legally entitled to harvest such crops as had matured on October 1, 1923. *Richards v. Knight,* 78 Iowa 69; *Everingham v. Braden,* 58 Iowa 133; *Clark v. Strohbeen,* 190 Iowa 989. The plaintiff does not controvert this legal proposition, and he concedes to the Fenton defendants their full right in the crop which they produced. As against them, he raises no question as to whether the crop was mature or not on October 1, 1923. As to the defendant F. E. Mundon, however, the plaintiff does deny that the crop was mature on such date, and denies that F. E. Mundon would be entitled to remove the same, even though he were a tenant. It may be noted here that N. E. Mundon has

interposed no defense. As against the Fentons, the plaintiff makes no controversy. The contest, therefore, is one wholly between the plaintiff and the defendant F. E. Mundon.

The general theory of argument put forward by the plaintiff is that the Fentons, and they alone, are the *tenants*, and that N. E. Mundon, as the owner of the land, is necessarily the landlord. This theory wholly eliminates F. E. Mundon as the tenant of his father, or as the landlord of the Fentons. The argument is that, if we regard F. E. Mundon as the tenant of his father, an absurd situation is created; that such a situation would give to F. E. Mundon a better standing than his father; that it would give him a better standing than though he had a warranty deed from his father; that it would give him a better standing than if he had an assignment of lease from his father. This is only saying, however, that, if F. E. Mundon was the tenant of his father, his legal rights would be substantially different from what they would be if he had been the grantee or the assignee of his father. Whether such rights as tenant are more advantageous than would be his rights as grantee or assignee, is always dependent upon the circumstances of the particular case. In this case, they are more advantageous. In no other sense is there any absurdity in the situation. The first controverted question, therefore, which we have to consider is one of fact. Did F. E. Mundon, by oral lease, rent the farm from his father for the season of 1923? The testimony of father and son is very direct on the question. The note executed in February, 1923, is in evidence. There is nothing in the nature of such evidence which renders it on its face improbable. Some such arrangement was the most advantageous thing which N. E. Mundon could do in his own selfish interest. He knew in advance that no rent falling due later than October 1st could inure to his benefit. There was nothing improbable in the conduct of F. E. Mundon in leasing the land from his father. He had farmed it as a renter for the previous two years. He had lived on it during those two years, and was living upon it at the time of these later negotiations, and continued to live on it up to October 1, 1923. The contention that he was the mere partner of his father is not supported by the evidence. The contention that he had collusively and fraudulently conspired with his father for the purpose of defrauding the plaintiff is not supported by the evi-

dence, in any other sense than that both of them will be presumed to know that such arrangement would 'prevent the acquisition of any rents by the plaintiff through his sheriff's deed. Selfish as this may seem, and hostile as it may have been to the interests of the plaintiff, the making of such a lease was within the legal rights of the parties thereto, and we may not moralize thereon. We reach the conclusion, therefore, as did the trial court, that F. E. Mundon was the lessee of his father. As such, he had a right to farm the land until October 1st, and to take a chance upon the then maturity of his crop. If, as such tenant, he had, on his own part, cultivated the entire farm, rather than sublet a part thereof to the Fentons, his relation to the corn crop and his right therein would be precisely the same as that of the Fentons is now. The fact that he sublet a part of the land to the Fentons did not enlarge or otherwise affect the rights of the plaintiff under his sheriff's deed. The plaintiff stands in court as the grantee of N. E. Mundon. As such grantee, his rights are precisely what the rights of N. E. Mundon would have been, if the sheriff's deed had not issued. If, in such case, N. E. Mundon could not intercept the rental share of mature crop due to F. E. Mundon from the Fentons, we see no room to say that the plaintiff can do so. The fallacy in the plaintiff's contention at this point is his insistence that the Fentons are the tenants of N. E. Mundon. The fact established by the evidence is that F. E. Mundon was the tenant of Nathan, and not the Fentons.

The question still remains as to whether the corn crop was mature on October 1st. If the crop was not mature, then it passed with the sheriff's deed, regardless of the tenant. If it

2. MORTGAGES: foreclosure: sale: "matured crops" defined. was mature, it did not so pass. The plaintiff contends that it was not mature. His witnesses so testified. The counter-contention is supported on the other hand by defendants' witnesses, to the effect that the corn was mature. The test of maturity is not whether the corn was seasoned, dried, and ready for cribbing. A crop is fully matured, within the meaning of the law, when it has reached that stage of growth or progress when it receives no further sustenance from the soil. *Everingham v. Braden,* 58 Iowa 133; *Richards v. Knight,* 78 Iowa 69. The witnesses for the plaintiff all predicated their claim of non-maturity upon the

fact that it was not fit to crib at that time. Their opinion evidence, therefore, was predicated upon a false basis, and for that reason is entitled to little weight. The fact that it is not seasoned or dried or ready for cribbing is not a very material consideration. We have no doubt, upon this record, that the preponderance of the evidence shows that this crop was mature, within the meaning of the law. F. E. Mundon, therefore, as a tenant, would have had the right to harvest the entire mature crop, if he had not sublet to the Fentons. We see no reason for saying that he does not have an equal right to receive from his subtenants his share of the mature crop.

We reach the conclusion that the decree below was right, and it is, accordingly,—*Affirmed.*

DE GRAFF, C. J., and ALBERT and MORLING, JJ., concur.

VERMILION, J., not participating.