HANS JOHN SCHULZ, appellee, v. VERNON HOFFMAN, appellant.

## No. 50723.

(Reported in 118 N.W.2d 532)

December 11, 1962.
Rehearing Denied February 12, 1963.

Carson & O'Connell, of Independence, for appellant.

Darold Jack, of Oelwein, for appellee.

THOMPSON, J.—The instant case presents another version of the all too familiar landlord-and-tenant controversies which are so frequently in the courts. The plaintiff's petition is in two divisions. The first alleges an oral lease of certain farm lands in Buchanan County by the defendant to the plaintiff, under the terms of which the defendant was to furnish from 150 to 250 head of feeder cattle, which were to be fed by the plaintiff from crops raised on the farm, with an equal division of the profits from their sale; and that defendant breached the agreement by failing to furnish more than 72 head; that the defendant failed to furnish adequate storage room for the corn raised; and that the defendant wrongfully converted to his own use the corn grown on 90 acres during the crop season of 1959. The lease commenced on March 1, 1958, was for one year, and apparently the plaintiff-tenant held over for the succeeding year from March 1, 1959 to 1960.

It was claimed that the conversion of the tenant's share of the corn crop above referred to arose because weather conditions prevented the plaintiff from harvesting it during the fall of 1959 and the succeeding winter; that he arranged to have neighboring farmers come in, about April 1, 1960, which was after his lease had terminated, and that they could have picked the corn in three or four days; but the defendant refused to permit this; and thereafter, during October of 1960, the defendant converted the corn to his own use by turning cattle and hogs into the fields to consume it. For the various matters claimed in this division the plaintiff asked damages of $8000.

In the second division the plaintiff alleges that he performed certain services for the defendant on another farm owned by the defendant, which were of the value of $2768; and that the defendant was indebted to him for certain other items particularized in Exhibit B attached to his petition in the total amount of $1731.78. Additional items stated to be "Labor on defendant's rough cattle" and "Labor building bridge" are respectively $600 and $85, making a total of $5184.78 claimed in Division II. At this point, however, the plaintiff admits an indebtedness to the defendant of $4447.36, leaving a balance claimed due in Division II of $737.42.

The plaintiff also asked exemplary damages, and the defendant pleaded a counterclaim; but the court withdrew the issue of exemplary damage and the counterclaim is not before us, for the stated reason that "it is not material to this appeal." The plaintiff does not appeal from the dismissal of his claim for punitive damages.

I. At the close of the evidence in the case the defendant made what he termed a "Motion for a Directed Verdict". When analyzed, however, it develops it was in effect a motion to withdraw issues separately; although when added together the various paragraphs if granted by the court would have eliminated all issues and so have required a directed verdict. The court denied the motion in its entirety. The defendant took no exception to instructions, and so must rest here upon the correctness or lack thereof in the court's ruling upon the several motions to withdraw issues.

■ II. We find error in the submission of the issues of failure to supply the claimed number of cattle to be fed, and to supply adequate storage space for the corn crop of 1959. It is sufficient to say as to the number of cattle that there is no substantial proof of loss arising from the asserted failure to furnish the additional cattle which plaintiff thinks should have been supplied. What sort of cattle were to be supplied, of what weight, how far advanced in feeding and fattening, and what reasonable profit could have been expected if they had been furnished would have been no more than speculation. The defendant moved to withdraw this issue from the jury; but the court submitted it by its statement of the issues and by its Instructions Nos. 1 and 2. No reference should have been made to this claim.

■ The same is true of the submission of the claim of failure to furnish adequate storage space. While there was not sufficient space to store all of the anticipated 1959 corn crop, there was more than enough for the amount that the plaintiff was able to harvest before the weather conditions prevented the completion of the picking. There is no evidence that the plaintiff suffered damage from any lack of storage space. By implication at least the instructions permitted the jury to consider these matters, when they were unsupported by the evidence.

■ Partly, at least, by way of answer to the contention that the trial court submitted issues which were unsupported by the evidence, the plaintiff says no prejudice resulted to the defendant because the verdict of the jury was not in excess of, in fact is somewhat less than it could have found on the damage claims which were properly submitted. We do not agree. We have no way of knowing what items the jury allowed, and which it disallowed. Even as to the items which we hold were proper for its consideration, there were factual disputes. It may have resolved some of them in favor of the defendant and allowed plaintiff to recover on issues improperly submitted. See Howard v. Brown, 168 Iowa 410, 415, 148 N.W. 987, 989. This case is not of the type where the amount allowed on a claim erroneously submitted may be readily determined and so deducted from the total judgment.

872

III. The third, fifth and sixth grounds of defendant's motion all referred to the conversion of the corn on the unharvested 90 acres, and asked withdrawal of this issue from the jury. The plaintiff testified that weather conditions prevented completion of the picking of all of the 200 acres of corn grown in 1959, and it was impossible to harvest it until about April 1, 1960. By that time his lease had expired. His evidence tends to show that he arranged with neighbors to have a "husking bee" with their corn pickers, and it would have been possible to complete the harvest of the remaining acres in three or four days, but that defendant, then in possession, refused to permit this. The defendant claims there had been an agreement to bring in a "picker-sheller" to finish the harvest. There was a dispute of fact upon these points. The "picker-sheller" was in fact brought in, but because of trouble from weeds and rocks was unable to operate satisfactorily and that method was abandoned. So 90 acres remained unpicked until about October of 1960, when the defendant harvested it by turning in his cattle and hogs to eat it.

We think there was a jury question on this issue, and the court was right in submitting it. It seems to be the defendant's thought that the plaintiff lost his interest in the corn upon the expiration of his lease and was not entitled to property in it thereafter. This is not the law. The rule is stated in 51 C. J. S., Landlord and Tenant, section 348, page 1036: " * * * crops matured at the end of the term may be removed by the tenant within a reasonable time thereafter." A leading case on the question is Opperman v. Littlejohn, 98 Miss. 636, 54 So. 77, 35 L. R. A., N. S., 707.

However, we are not without a considerable volume of authority in Iowa. Hecht v. Dettman, 56 Iowa 679, 682, 7 N.W. 495, 10 N.W. 241, 242, 41 Am. Rep. 131, 133, holds this: "Dettman was warranted in the belief that, according to the seasons, and the course of nature, his grain would be harvested while he yet had the right to harvest it. So far as the ripening of the grain was involved it met his just expectations. But by reason of unfavorable weather he was unable to sever it from the ground before the title passed to Hecht. Having sown in peace, and in

a just belief that he could rightfully reap, we thi$\hat{}$nk he should have been permitted to do so."

We have frequently held that a matured crop belongs to the tenant, subject to the landlord's lien, and that maturity does not depend upon whether it is actually severed from the ground, but upon whether it no longer draws sustenance from the soil. In Goldstein v. Mundon, 202 Iowa 381, 383, 210 N.W. 444, 445, we said: "As between the plaintiff and the tenants, however, such tenants were legally entitled to harvest such crops as had matured on October 1, 1923." See also Durflinger v. Heaton, 219 Iowa 528, 533, 258 N.W. 543, 546; Clark v. Strohbeen, 190 Iowa 989, 993, 181 N.W. 430, 433, 13 A. L. R. 1419; and Everingham v. Braden, 58 Iowa 133, 134, 12 N.W. 142, 143.

There were of course questions of abandonment and of agreed means of harvesting the corn which were disputed and so were for the determination of the jury.

■ IV. The eighth ground of the motion to direct asked withdrawal of the issue of services performed by the plaintiff for the defendant on another farm owned by the latter. It is sufficient to say that the record shows substantial evidence in support of plaintiff's claim and it was properly submitted to the jury.

■ V. The ninth ground of the motion asked withdrawal of the issue concerning an item of $1006 because there was uncontroverted evidence that this had been settled at a conference between the parties; and because the plaintiff's evidence fails to show this amount was due and owing from defendant to plaintiff. This sum seems to have been claimed by the plaintiff for his share of the profits arising from the joint feeding venture. The defendant asserts payment, which plaintiff denies. There was a fact question for the jury's determination.

In view of another trial, however, it is appropriate to say that the court's submission of the issue was somewhat meager. It was contained in Instruction No. 6, which includes this item with several others, prefaced by the statement that prior to trial the parties had agreed to certain items; and "That the following amounts are correct, but the defendant denies that he owes

them." This brief statement is somewhat confusing, and we think it would be best to tell the jury why the defendant denies he owes them, as because of payment, if there is evidence to that effect.

For the errors pointed out in Division II the case is reversed and remanded for a new trial.—Reversed and remanded.

All JUSTICES concur.