Betty Jo JOHNSON, Individually and as Next Friend of Jay Douglas Johnson, Appellant,

v.

SAFECO INSURANCE COMPANY, Appellee.

No. 6147.

Court of Civil Appeals of Texas, El Paso.

Feb. 17, 1971.

Turpin, Smith, Dyer, Hardie & Harman, Joseph Connally, Odessa, for appellant.

Shafer, Gilliland, Davis, Bunton & McCollum, Ray Stoker, Jr., Odessa, for appellee.

OPINION

RAMSEY, Chief Justice.

This is an appeal from a summary judgment. The parties will be designated as they were in the trial court.

The plaintiff, Betty Jo Johnson, individually and as next friend of her minor son, Jay Douglas Johnson, filed suit against the defendant, Safeco Insurance Company, seeking to recover from the defendant damages that had theretofore been awarded as a result of an automobile collision. Plaintiff's son, on December 14, 1967, was riding

a motorcycle and collided with Mrs. Patricia Ann Brown. In a separate action, plaintiff obtained judgment against Mrs. Patricia Ann Brown in the sum of $6,625.-00, in cause number B–26,551 in the District Court of Ector County.

The judgment in cause number B–26,551 is included in the transcript, reciting that the parties, Betty Jo Johnson as plaintiff, and Patricia Ann Brown as defendant, were present in court; that a jury was waived, and the damage suit tried before the court. The judgment also recited that Harold C. Smith had been previously dismissed as a defendant, though no reason was shown for his dismissal.

Plaintiff alleges that on the date of the accident, the 1960 Chevrolet automobile being driven by Mrs. Brown was actually owned by her father, Harold C. Smith, who lived in Denver, Colorado, and that the title was in Smith's name and that the defendant, Safeco, had issued a policy of liability insurance to Smith which was in effect at the time of the collision. Plaintiff further alleged that the defendant was timely notified of the collision and that Smith and his daughter, Mrs. Brown, demanded that the defendant furnish a defense in the damage suit which was filed against Mrs. Brown, but the defendant failed and refused to do so; thus, this suit was filed as a direct action to recover on the policy. The defendant answered by general denial.

The plaintiff's petition alleges a policy of insurance having been issued by the defendant, and the defendant admits the existence of the policy, but the policy itself is not included in the record. We assume, for the purpose of this appeal, that the provision of such policy would not be of any consequence in determining the points of error involved. Also, the Colorado certificate of title is attached as an exhibit to plaintiff's response to defendant's motion for summary judgment, though the executed assignment of the certificate is not shown. For purposes of this opinion, and since there is no assignment of error, we will assume that such assignment alleged by defendant was in proper form.

Defendant filed its motion for summary judgment, basing its motion on stipulations of the parties, an affidavit of Harold C. Smith, and the oral deposition of Patricia Ann Brown. Smith, in his affidavit, stated that he was a resident of Colorado and the father of Mrs. Brown. That Mrs. Brown had lived in Odessa for approximately five months prior to November, 1967, and that during this time she had been driving the car. That since his daughter needed a car, and since he had no further need for it, he decided to transfer title to her. He stated that he executed an assignment of the title to her before a notary public where he worked, and mailed it to his daughter no later than November 30, 1967. His affidavit further stated that on the date of the collision, he was not the owner of the car.

Mrs. Brown, in her deposition, testified that she had lived in Odessa, Texas since June, 1967 and that she had been driving the car regularly since moving to Texas. In fact, she had been driving the automobile since February, 1967. She testified that her father gave her the car in December, 1967 and that she received the title from her father about a week before the accident and that the title had been signed before a notary public. She did not send the title to Colorado for registration and, in response to questioning, she stated that the car at the time was registered in Colorado because she had not "gotten the time" to have it registered in her name after receiving it. She further testified that she did not think the car was hers until she had it registered. She acknowledged receiving the title and accepting it while living in Odessa, Texas.

After the wreck, and according to the exhibits attached, Mrs. Brown did undertake to comply with the Certificate of Title Act of Texas.

By requests for admissions, the defendant admitted:

(1) That the collision occurred; and

(2) That Mrs. Brown was driving the automobile with Colorado license tags; and

(3) That the automobile was registered under a Colorado certificate of title; and

(4) That the automobile was registered to Harold C. Smith in Colorado; and

(5) That the defendant, Safeco, had issued a policy of liability insurance prior to December 14, 1967 covering the automobile; and

(6) That the policy was paid up for a term extending beyond December 14, 1967; and

(7) That the judgment had been recovered against Mrs. Brown.

The defendant, however, denied:

(1) That the liability policy provided coverage for Smith and anyone driving the automobile with his consent; and

(2) That at the time of the collision Mrs. Brown was driving with Smith's consent; and

(3) That on or before December 15, 1967 Mrs. Brown reported the collision to the defendant; and

(4) That Mrs. Brown requested a defense from the defendant in the damage suit; and

(5) That Mrs. Brown, through her attorney, Jerry P. Childs, demanded a defense from the defendant; and

(6) That the defendant refused to defend Mrs. Brown.

A stipulation was executed by attorneys for both parties agreeing that the stipulation, affidavits, deposition and other matters adduced in the damage suit would be admissible in evidence in this proceeding. A hearing was held on the motion on December 23, 1969, and judgment entered for the defendant on March 26, 1970. From this ruling of the court, the plaintiff has perfected this appeal.

Plaintiff has assigned three points of error, i. e.:

(1) The trial court erred in holding title to the 1960 Chevrolet had passed from Harold C. Smith to Patricia Ann Brown on December 14, 1967; and

(2) The trial court erred in failing to consider the provisions of Art. 1436–1, Texas Penal Code (the Certificate of Title Act); and

(3) The trial court erred in holding no fact question exists concerning the ownership of the 1960 Chevrolet on December 14, 1967.

Under the plaintiff's assignments of error it would appear that only two matters would need to be resolved, these being:

(1) Whether or not a transfer of ownership was prevented due to non-compliance with the Certificate of Title Act; and

(2) Whether or not a material fact issue exists concerning ownership.

The pertinent portions of the Texas Certificate of Title Act, being Article 1436–1, Penal Code, with which appeal is concerned, are as follows:

"Sec. 30. (b) Before any motor vehicle brought into this State by any person, other than a manufacturer or importer, and which is required to be registered or licensed within this State, can be bargained, sold, transferred, or delivered with intent to pass any interest therein or encumber by any lien, application on form to be prescribed by the Department must be made to the designated agent of the county wherein the transaction is to take place for a certificate of title, and no

such designated agent shall issue a receipt until and unless the applicant shall deliver to him such evidence of title as shall satisfy the designated agent that the applicant is the owner of such motor vehicle, and that the same is free of liens except such as may be disclosed on an affidavit in form to be prescribed by the Department."

"Sec. 33. No motor vehicle may be disposed of at subsequent sale unless the owner designated in the certificate of title shall transfer the certificate of title on form to be prescribed by the Department before a Notary Public, which form shall include, among such other matters as the Department may determine, an affidavit to the effect that the signer is the owner of the motor vehicle, and that there are no liens against such motor vehicle, except such as are shown on the certificate of title and no title to any motor vehicle shall pass or vest until such transfer be so executed."

"Sec. 53. All sales made in violation of this Act shall be void and no title shall pass until the provisions of this Act have been complied with."

The courts of this state have been called on to interpret the Certificate of Title Act relating to the sale and transfer of automobiles under Section 33, though no case appears reported construing the requirements under Section 30(b) involved in this appeal.

Both parties to this appeal cite as controlling authority Elder Chevrolet Co. v. Bailey County Motor Co., 151 S.W.2d 938 (Tex.Civ.App.1941, n. w. h.); Pioneer Mut. Compensation Co. v. Diaz, 142 Tex. 184, 177 S.W.2d 202 (1944); and Viator v. American General Insurance Company, 411 S.W.2d 762 (Tex.Civ.App., n. r. e.). These three cases all involve transfers of title under Section 33, supra; yet all would be affected by Section 53, supra.

In Elder Chevrolet Co. v. Bailey County Motor Co., supra, Elder contracted to sell five automobiles to Bailey with part of the consideration paid in cash, with a note for the balance. The note was purportedly secured by a chattel mortgage, but the mortgage was never recorded in Texas. Elder never assigned any certificate of title and continued to hold the certificate of title in question. Thereafter, Bailey Motor sold the car in question to Stewart, who executed a note and mortgage. Bailey Motor did not deliver Stewart any certificate of title. Bailey Motor subsequently sold Stewart's note and mortgage to Southwestern Investment Company and, upon default by Stewart, Southwestern obtained possession of the car. Suit was brought by Elder against Bailey Motor and Southwestern Investment to recover on the note from Bailey Motor and to foreclose its lien on the car, and to obtain possession as against Southwestern Investment. The case was dismissed as to Bailey Motor since it apparently was a New Mexico resident and no personal service was obtained. The possession of the car *was restored to Southwestern Investment* by the trial court and affirmed by the Court of Civil Appeals in its opinion. In arriving at its conclusion the court held:

(1) That the failure to execute and deliver the certificate of title from Elder to Bailey was insufficient to pass title and for this purpose, it was void and ineffective; and

(2) That the action Elder brought was for foreclosure of a lien, and since Elder did not deliver any certificate of title, the consideration for the note and mortgage failed; and

(3) That the Court was called on to enforce an illegal sale; and

(4) That in the absence of performance, or tender of performance, Elder cannot recover; yet

(5) That all rights of Elder were not extinguished—merely, Elder is denied a right of foreclosure.

The Elder case points out that the Certificate of Title Act went into effect on October 1, 1939. The transaction occurred between Elder and Bailey on March 18, 1940. In the Elder case, no effort was made by any of the parties to comply with the Certificate of Title Act. Subsequent decisions in this state establish the rule that failure to comply with the statutory requirements relating to the transfer of title to a motor vehicle does not render the transfer void as between the parties.

In Pioneer Mutual Compensation Co. v. Diaz, supra, the appellee, Diaz, purchased a motor vehicle and caused the certificate of title to be placed in the name of a man named Garcia in order that Diaz could operate the motor vehicle to make delivery of liquor under Garcia's permit. Diaz then purchased liability insurance in his own name covering the vehicle. Diaz's driver accidently killed a minor child, and suit was brought by Diaz against Pioneer Mutual to recover for the loss sustained by Diaz under a compromise settlement agreement. The trial was to a jury, and in response to special issues, the jury found that Diaz was the owner. In affirming the trial court, the Court of Civil Appeals, El Paso, held in its opinion, reported in 178 S.W.2d 121, that such ownership was supported by the evidence and observed that such was permitted under the Certificate of Title Act, Art. 1436–1, Vernon's Penal Code. The court stated, on page 123 of its opinion:

"* * * The act does not prohibit the registration of a motor vehicle in the name of one other than the true owner, nor render the title invalid or prohibit the passing of title in such event. It merely provides, after the first sale the title shall pass and vest only by a transfer of the certificate of title, Sec. 33, by the owner designated in the certificate of title. 'Owner designated,' indicates an owner may be different from the true owner.

"Under the prior law motor vehicles were required to be registered, and that subsequent sales should be by delivery of the registration certificate and written bill of sale. Under such prior provisions it was held the registration of a motor vehicle in the name of one merely raised the presumption of ownership in him, 'which is not evidence but rather a rule of procedure or an "administrative assumption" which "vanishes" or is "put to flight" when positive evidence to the contrary is introduced.' Empire Gas & Fuel Co. v. Muegge, 135 Tex. 520, 143 S.W.2d 763, at page 767, pars. 3 and 4, and cases there cited, (T). It becomes unnecessary here to determine whether viewed from the defendant's standpoint the proof was sufficient to raise a jury question, because the result is the same. The jury found from the facts Diaz was the owner. The rule, we think, applicable under the certificate of title act in the absence of a prohibition against the registration of a motor vehicle in the name of one other than the true owner. This conclusion renders unnecessary a consideration of any claims of fraud and misrepresentation with respect to ownership."

This holding of the Court of Civil Appeals was affirmed as correct by the Supreme Court in its opinion reported in 177 S.W.2d 202. The Supreme Court refused to give the Certificate of Title Act the construction that the name on the certificate of title conclusively proved ownership, and expressly adopted the wording of the Court of Civil Appeals quoted above.

In Viator v. American General Insurance Company, supra, Viator sued American General Insurance Company for damages paid by Viator and his insurance carrier. Viator had made an agreement with Martin for the sale of a truck. Martin owed Viator $500.00 and they agreed that Viator would cancel the indebtedness and Viator would also give Martin $300.00 credit at his gas station which would not be used until after January 1, 1962. On December 28, 1961, Martin delivered the truck. The parties agreed that the certificate of title

would not be transferred until after the first of the year, Viator took possession of the truck and had a collision on December 30, 1961. No certificate of title was transferred. Viator contended that, as a matter of law, the contract between him and Martin was in violation of the Texas Certificate of Title Act and therefore void as provided in Section 53 of the Act. The court held that as between the parties, the sale of the truck on December 28, 1961 was legal, and that as of the date of the accident, Viator was the owner. In affirming the trial court, the opinion quotes the language in Hicksbaugh Lumber Company v. Fidelity & Casualty Company of New York, 177 S.W.2d 802 (n. w. h.) as correctly interpreting the legislative intent of the Certificate of Title Act:

" 'The legislative intent, as disclosed in Section 1 of the Certificate of Title Act, was to lessen and prevent theft and traffic in stolen motor vehicles (Motor Investment Company et al. v. Knox City, [141 Tex. 530,] 174 S.W.2d 482, 483), and not to prevent sales and transfers of interest in motor vehicles. The Act does not prohibit or provide penalties for persons who have transferred interest in motor vehicles without compliance with the provisions thereof' ".

The plaintiff contends that the Viator case and the Pioneer Mutual case are distinguishable from this case for two reasons, namely, first—that a consideration had been paid to the party in whose name the certificate of title was registered; and second—that the transfer of this title would be subject to the provisions of Section 30 (b) of the Certificate of Title Act, which is stricter in its requirements than Section 33. As to the first contention, the matter of a parol gift has been discussed at great length in Truck Insurance Exchange v. Schuenemann, 391 S.W.2d 130 (Tex.Civ. App., n. r. e.), wherein the parents made a parol gift of an automobile to their son as a graduation present intending at that time that their son would immediately have title to said automobile. (The title was not transferred and no application was made for a new title.) The son was subsequently killed. The San Antonio Court of Civil Appeals discusses the same authorities as are contained in this opinion in an action for declaratory judgment, and concludes that even though the provisions of the Certificate of Title Act were not complied with, the son was the owner of the automobile at the time of the collision. The intention to part with ownership in the case before this court is much stronger, in that Smith actually executed an assignment of the title which was delivered to Patricia Ann Brown about a week before the collision, and thereafter, on February 2, 1968, she commenced compliance with the Certificate of Title Act, prior to the institution of this action, though after the collision in question.

Plaintiff's second contention is that the transfer involved here is controlled by Section 30(b) of the Certificate of Title Act, which is stricter in its terms than Section 33. It is correct that Section 30(b) contains different language regulating the transfer of title. Section 33 provides that "No motor vehicle shall be disposed of", whereas Section 30(b) provides, "Before any motor vehicle * * * can be bargained, sold, transferred or delivered with intent to pass any interest therein * * *". Section 30(b), although embodied in an amendment, is the same as Section 30 in the Certificate of Title Act as originally enacted. Both sections are specific in setting out the statutory requirements for proper transfer of certificates of title; yet, both Sections 33 and 30(b) are further subjected to a more rigid statutory provision under Section 53, declaring void any sale made in violation, and providing that no title shall pass until the Act is complied with. Non-compliance with Section 33 should have the same effect as non-compliance with Section 30(b). Since both are controlled by Section 53, any change of ownership would be subjected to the same legislative intents and be governed by the same basic rules of case law interpretation.

■ This case does not involve a dispute between persons claiming title to the car. Under such circumstances, the administrative presumption of ownership existing from the recitals on the certificate may be overcome by the evidence showing ownership. The Colorado certificate of title had been executed, assigned and delivered to Mrs. Brown, together with the possession and use of the automobile. Mrs. Brown had received and accepted them, and subsequently made application for a Texas title. The intent of the parties was apparent.

For the foregoing reasons, the points of error presented by the appellant are hereby overruled, and the judgment of the trial court is affirmed.