505 P.2d 41 (1972)
James BUNCH, Jr., Plaintiff-Appellee,
v.
SIGNAL OIL AND GAS COMPANY, d/b/a Mack Trucks, Inc., Defendant-Appellant.
No. 71-366.
Colorado Court of Appeals, Div. I.
October 3, 1972.
Rehearing Denied October 25, 1972.
Certiorari Denied December 18, 1972.
*42 John D. Comer, Denver, for plaintiff-appellee.
Stockton & Lewis, Henry V. Ellwood, III, Denver, for defendant-appellant.
Not Selected for Official Publication.
SMITH, Judge.
On November 7, 1969, James Bunch purchased a Kenworth truck from Signal Oil and Gas Company, d/b/a Mack Trucks, Inc. On the bill of sale, the truck was represented as a 1962 model, "as is," with a broken crankshaft. After entering into a sales agreement with Bunch, Mack Trucks found it was unable to furnish Bunch with a certificate of title. Mack Trucks represented to Bunch that the title would be forthcoming and Bunch agreed to take possession of the truck on the condition that Mack Trucks would furnish him with a certificate of title in a reasonable time. Bunch rebuilt the truck but, since he had not received a certificate of title, he was unable to license or legally use the truck.
Mack Trucks allowed Bunch to use its dealer plates so that he might operate the truck until furnished a certificate of title. On January 30, 1970, Bunch was stopped in Missouri by police who impounded his load because Bunch did not have a certificate of title to the truck. Bunch was forced to spend $800 to have the impounded load transferred to another truck. Bunch thereafter ceased operation of the truck and ultimately, in May of 1970, was forced to sell the truck, for parts, at $1500, its approximate value without the title.
Bunch sued claiming that Mack Trucks had breached its sales contract with him. Trial was held to a jury. The jury was instructed that plaintiff sought $5,350 damages for misrepresentation of the model year of the truck, $800 for transfer of an impounded load, and $8,000 in lost income. A verdict was returned for plaintiff in the amount of $14,150, the total of these three figures. On appeal, defendant challenges the validity of this verdict. We reverse on the issue of damages for lost income.
At no time during the trial, or in briefs to this court, was the case analyzed in terms of the sales provisions of the Uniform Commercial Code, C.R.S.1963, XXX-X-XXX et seq. The transaction in question, however, was for an item of goods in existence at the time of its identification to the contract and is, therefore, a sales contract under the Code. C.R.S.1963, XXX-X-XXX(1); C.R.S.1963, XXX-X-XXX(1). The sale, defined as "the passing of title from the seller to the buyer for a price," took place when plaintiff took possession of the truck. C.R.S.1963, XXX-X-XXX(1). Title effectively passed to the plaintiff, even though plaintiff did not have possession of the certificate of title. C.R.S.1963, XXX-X-XXX(2). Semple v. State Farm Mutual Automobile Insurance Co., 215 F.Supp. 645 (E.D.Pa.)
In this case, there is no conflict between the Certificate of Title Act, C.R.S.1963, 13-6-1 et seq., and the Uniform Commercial Code, supra. See C.R.S.1963, XXX-X-XXX. Although C.R.S.1963, 13-6-8 provides that no purchaser "shall acquire any right, title or interest in and to a motor vehicle purchased by him unless and until he shall obtain . . . the certificate of title thereto," it has been held that non-delivery of a certificate of title will not prevent the recognition of the change of ownership as to the immediate parties to the transaction. United Fire and Casualty Co. v. Perez, 161 Colo. 31, 419 P.2d 663. C.R.S.1963, 13-6-8 does not control the results of an action brought for damages for breach of contract between the original parties to the transaction. Randall v. Carroll, 30 Colo.App. 45, 488 P.2d 250.
The record establishes that when plaintiff accepted the truck he had no idea that the truck had 1953 serial numbers, but on cross-examination, plaintiff admitted that six days after taking possession of the truck, he began to suspect that it was a 1953 model. Plaintiff's testimony, however, *43 indicates that his only complaint to defendant concerned the title. The evidence is unequivocal in establishing the fact that plaintiff was primarily concerned with operating his rebuilt truck legally, not with the model year of the truck. Since buyer, after a reasonable opportunity to inspect the truck, did not reject it, he accepted the nonconformity of the truck. C.R.S.1963, XXX-X-XXX. Hence, he cannot recover for breach concerning the model year. C.R.S.1963, XXX-X-XXX.
Plaintiff's recovery must be based upon the unreasonable delay of defendant in furnishing title to the truck. Although plaintiff did not revoke his acceptance of the truck, he may recover "the loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable." C.R.S.1963, XXX-X-XXX(1). This comports with the common law holding that plaintiff, upon proving the breach of contract, is entitled to be placed in the same position which he would have been had the contract not been breached. Taylor v. Colorado State Bank, 165 Colo. 576, 440 P.2d 772.
From our analysis of the case, under the Code, the damages as to lost profits, if supported by sufficient evidence, and the expense of transferring the impounded load could properly be allowed. The amount of $5,350, if correctly characterized by the trial court as a loss because of misrepresentation of the model year of the truck, would not be a loss resulting in the ordinary course of events from the seller's breach in failing to timely deliver a "title." Nevertheless, further inspection of how this amount was computed has convinced us that, although the trial court's characterization is misleading, both the trial court and the jury understood that the $5,350 amount refers to the loss plaintiff experienced on the purchase and sale of the truck. By adding the original purchase price of the truck, $1,850, to the amount expended in rebuilding, $5,000, the result is a truck valued at $6,850. However, the truck sold for only $1,500 because plaintiff had no certificate of title, resulting in a net loss to plaintiff of $5,350. Hence, although the trial court did not consider the Code in its instructions, the damages as awarded by the jury were correct according to a Code analysis of the factual situation. Likewise, the jury's award of $800 was correct.
On appeal, the defendant urges that it was error for the trial court to allow the jury to find damages for loss of income since those damages were not proved with reasonable certainty. It is settled that damages for loss of income will not be awarded unless net profits are proved on the basis of past experience and are not speculative, remote or imaginary. Lee v. Durango Music, 144 Colo. 270, 355 P.2d 1083. Damages for lost profits are recoverable only to the extent that the evidence affords a sufficient basis for estimating their amount in money with reasonable certainty. Restatement of the Law of Contracts § 331(1). Defendant points out that plaintiff's proof of lost profits consisted solely of plaintiff's estimate that his net income was usually between $1600 to $2000 per month when he was driving a truck. Plaintiff offered no evidence of his gross income and expenditures so that the jury could determine his net income with any degree of certainty and thus substantiate his claims. This is insufficient to meet the test of certainty required for the proof of lost profits. Consequently, the court erred in instructing the jury that it could award plaintiff damages for lost profits.
The fact that plaintiff failed to prove his damages concerning loss of profits will not prevent his recovery for actual expenditures made in reasonable reliance on the performance of the contract or made because of the breach of the contract. The amount of the properly recoverable damages not being in dispute, we reverse as to the amount awarded plaintiff as damages for lost profits and remand the case to the trial court with directions to vacate the original judgment and to enter judgment in the amount of $6,150.
COYTE and DWYER, JJ., concur.