Harvey P. SANDHORST, Appellee,

v.

MAUK'S TRANSFER, INC., Appellant.

No. 2–57871.

Supreme Court of Iowa.

April 20, 1977.

Dick L. Jensen, of Dreher, Wilson & Adams, Des Moines, for appellant.

Roland K. Landsness, of Jones, Cambridge, Carl, Feilmeyer & Landsness, Atlantic, for appellee.

Heard by MOORE, C. J., and MASON, RAWLINGS, LeGRAND and UHLENHOPP, JJ.

MOORE, Chief Justice.

Defendant appeals from judgment entered on adverse jury verdict in plaintiff's action for conversion of a truck in violation of an oral and written agreement of the parties. We affirm.

The facts involved are not seriously disputed. The record reveals plaintiff Sandhorst had been employed by defendant Mauk's Transfer, Inc. as a truck driver beginning in 1967. In April 1969 Sandhorst and Mauk's entered into an agreement whereby Sandhorst purchased a 1966 Kenworth truck from Mauk's. He made a $500 down payment and executed a $15,000 note for the balance. As part of the agreement Sandhorst leased the truck back to Mauk's. The parties agreed the title certificate would show Mauk's as the owner but that Sandhorst would make all payments on the truck and would be responsible for its upkeep and expenses. Sandhorst was to receive the certificate of title to the truck when his note was paid.

This arrangement continued until May 1969 when the truck was wrecked when struck by an automobile. Sandhorst's note was cancelled after his indebtedness was paid from insurance proceeds.

Thereafter a second Kenworth truck, the subject of this lawsuit, was purchased by Mauk's from an Omaha dealer for $23,750. Mauk's agreed to sell the truck to Sandhorst and he subsequently wrote a check for $1000 as a down payment. There is conflicting evidence whether a note was executed for the balance of the payments. However, it is undisputed the parties did operate under the old lease until a new one was executed in March 1971. This lease showed Sandhorst as owner and lessor of the truck. Both parties testified that if payments were satisfactorily made by Sandhorst the certificate of title was to be transferred to him. Robert Fleming, Mauk's bookkeeper, testified he credited Sandhorst's account for principal and interest as each payment was received. At no time pertinent in this case was Sandhorst delinquent in payments due. Sandhorst interpreted the relationship as a binding agreement. Alva Mauk testified for the company that it was nothing but an "incentive agreement."

The agreement came to an end in September 1971 when Sandhorst failed to make a hauling trip and was found inside an Omaha tavern with his truck idling outside. Mauk's then terminated him as a driver but gave him a week to work and pay the balance of $10,476 then owing on the truck. When Sandhorst was unable to do so, Mauk's took the truck and paid him $524. This was based on the Omaha dealer's lowest estimated wholesale value of the truck.

Sandhorst testified he believed the truck was worth between $15,000–16,000 at the time it was taken by Mauk's. His expert valued it at $15,500. Mauk's expert valued it at $12,500 to $13,000. When Mauk's refused to credit Sandhorst more for his investment in the truck he sued the company for conversion.

Prior to trial Sandhorst submitted several requests for admissions which Mauk's objected to and denied. On trial plaintiff's proof and Mauk's evidence established, without dispute, Mauk's wrongfully failed to make the pretrial requested admissions. After trial Sandhorst made application for attorney fees pursuant to the provisions of rule 134(c), Rules of Civil Procedure. The court allowed $300.

Mauk's has appealed from judgment on the jury verdict for plaintiff in the amount of $3000 actual and $750 exemplary damages as well as the $300 attorney fee allowance.

I. Our review in this law action is on errors assigned. We review the record in a light most favorable to the judgment and if supported by substantial evidence the fact findings are binding on us and will not be disturbed. However, we are not precluded from inquiry as to whether trial court applied erroneous rules of law which materially affected the decision. We are not bound by the trial court determinations of law. Rule 344(f) 1, R.C.P.; *Sand Seed Service, Inc. v. Bainbridge*, Iowa, 246 N.W.2d 911, 912 and citations.

II. Mauk's first vigorously asserts the trial court erred in overruling its pretrial motion, motion for directed verdict and posttrial motions raising its contention Sandhorst had no interest in the truck because of the provisions of Code section 321.45(2). It provides:

"2. No person shall acquire any right, title, claim or interest in or to any vehicle subject to registration under this chapter from the owner thereof except by virtue of a certificate of title issued or assigned to him for such vehicle or by virtue of a manufacturer's or importer's certificate delivered to him for such vehicle; nor shall any waiver or estoppel operate in favor of any person claiming title to or interest in any vehicle against a person having possession of the certificate of title or manufacturer's or importer's certificate for such vehicle for a valuable consideration except in case of

"a. the perfection of a lien or security interest by notation on the certificate of title as provided in section 321.50 or

"b. the perfection of a security interest in new or used vehicles held as inventory for sale as provided in Uniform Commercial Code, Chapter 554, Article 9, or

"c. a dispute between a buyer and the selling dealer who has failed to deliver or procure the certificate of title as promised, or,

"d. except for the purposes of section 321.493. Except in the above enumerated cases, no court in any case at law or equity shall recognize the right, title, claim or interest of any person in or to any vehicle subject to registration sold or disposed of, or mortgaged or encumbered, unless evidenced by a certificate of title or manufacturer's or importer's certificate duly issued or assigned in accordance with the provisions of this chapter."

The crux of defendant's argument is that since it was the undisputed "owner" on the certificate of title and plaintiff had no interest reflected on that certificate, plaintiff's claim of ownership based on an oral agreement and written lease are untenable.

We have been called upon to construe section 321.45(2) on several prior occasions. The earlier cases adopted a strict interpretation which appears to have been diluted somewhat by more recent decisions.

In *Varvaris v. Varvaris*, 255 Iowa 800, 124 N.W.2d 163, we were confronted with a replevin action brought by an executor against the surviving spouse for possession of two automobiles and the accompanying title certificates. The certificate showed title of both vehicles in decedent at time of his death. Defendant spouse claimed a right to them by virtue of a gift inter vivos. However, we held that the gift was incomplete because no assignment of the title certificate was made in compliance with section 321.45(2).

*Calhoun v. Farm Bureau Mutual Ins. Co.*, 255 Iowa 1375, 125 N.W.2d 121 also illustrates our early approach to the statute. There, plaintiff's insurance carrier sought to avoid liability under a collision policy covering plaintiff's automobile on the basis it had been sold. Plaintiff had agreed to trade his car to a friend but had delayed transferring the certificate of title until a loan was approved. When his friend wrecked the car prior to loan approval, the insurance carrier denied coverage alleging a completed sale had already transferred ownership. We rejected this argument and held the carrier liable stating at 255 Iowa 1382, 125 N.W.2d 126:

" * * *. Our present statute specifically provides the one and only method for transfer of title between buyer and seller. That is by assignment of the motor vehicle title certificate.

" * * *, we conclude plaintiff as title holder remained the owner of the 1958 Pontiac and entitled to recover under the 'collision clause' of his policy with defendant. To hold otherwise would nullify the statute. * * *."

In *State v. Sabins*, 256 Iowa 295, 127 N.W.2d 107 (1964) we reversed a criminal conviction for the crime of obtaining property by false pretenses where defendant obtained possession of a motor vehicle but was not assigned the certificate of title. We held the element of obtaining title was not proven since title was not transferred as defined in section 321.45(2).

In *Marx Truck Line, Inc. v. Fredricksen*, 260 Iowa 540, 150 N.W.2d 102, we were presented with a fact pattern similar to the one here. The parties had entered into an oral agreement whereby part of the defendant driver's earnings were applied as payments on the purchase price of the truck-tractor. When a dispute arose on the terms of the sale agreement and defendant ceased hauling freight but retained possession of the company truck, the corporation brought an action in replevin. We held plaintiff corporation was not entitled to possession because it was not shown to be the titled owner on the certificate when the replevin action was commenced.

More recently, however, in *Farmers Butter & Dairy Coop. v. Farm Bur. Mut. Ins. Co.*, Iowa, 196 N.W.2d 533, we held that section 321.45(2) did not operate as to bar a bailee's right of collision coverage recovery under the policy issued it by defendant-insurer. The rationale for this interpretation

was that "bailments" were not contemplated by the legislature when it provided for the certificate of title as the exclusive method of proving motor vehicle ownership and effecting transfer of title.

Here, for the first time, we must determine the proper application of section 321.-45(2) involving an undisputed two-party transaction relating to motor vehicle ownership or interest.

Several general principles from leading legal authorities and other jurisdictions give some guidance.·

Professor Gilmore aptly made this observation in his text, Security Interests in Personal Property, section 20.1, pages 554, 555 (1965):

> "Many of the certificate of title acts provide that no interest of any kind in a vehicle subject to the act shall be recognized unless evidenced by possession of, or notation on, a certificate. The converse of this proposition is, of course, that anyone who has the certificate, or whose lien is noted on it, is in an impregnable position against all competing claimants who have not brought themselves within the protection of the act. Both the 'no interest without a certificate' provision and the converse that 'he who has a certificate has everything' are attempts to provide simple, mechanical solutions to obscure and difficult problems. Statutes of frauds and the parol evidence rule furnish convenient historical analogies. Difficult problems are not so easily banished; the fate of such statutory 'solutions' is, in the first instance, to provoke an inordinate amount of litigation and, ultimately, to be construed, for all practical purposes, out of existence.

> "Neither the statutory provision nor its converse could be literally applied without leading to something like chaos. So far as 'no interest without a certificate' goes, it has been, is and no doubt will continue to be a fact of life—the title acts to the contrary notwithstanding—that people acquire interests in cars which the law ought to protect (unless the law is an ass) even though the interests are not properly evidenced by or on certificates. So far as 'he who has a certificate has everything' goes, that would serve in many situations, if literally applied, to reverse the whole elaborate structure of priorities which, implicit in pre-Code law, becomes explicit under Article 9 of the Code.

> "Thirty or forty years of litigation under the title acts have brought the process of statutory disembowelment well along. The volume of litigation still continues heavy; reading the current crop of title cases is one of the less attractive chores that must be performed by anyone unwise enough to undertake the preparation of a book like this. *But the consensus that gradually begins to emerge from the cases is the one that an astute observer would have predicted from the beginning: no interest will be recognized which is not evidenced by a certificate unless, on principles of law, equity and natural justice, it ought to be recognized even without the certificate; he who has the certificate has everything unless sound reasons of policy compel his subordination.*" (Emphasis supplied).

Consistent with the rationale of the above statement, many jurisdictions have held that nondelivery of the certificate of title does not prevent change of ownership as between the parties to the transaction. 7 Am.Jur.2d, Automobiles and Highway Traffic section 43, pages 628, 629. Both Texas and New Mexico focus on the intent of the immediate parties to the transaction rather than delivery of a certificate of title. *Johnson v. Safeco Insurance Company*, Tex. Civ.App., 464 S.W.2d 164; *Perez v. Sandoval*, Tex.Civ.App., 412 S.W.2d 945; *Schall v. Mondragon*, 74 N.M. 348, 393 P.2d 457. See also *Universal Underwriters Insurance Co. v. Wilson*, 33 Md.App. 36, 363 A.2d 627. In *Waggoner v. Wilson*, 31 Colo.App. 518, 522, 523, 507 P.2d 482, 485, the court stated:

\* \* \*. Notwithstanding the provision of C.R.S.1963, 13–6–8, that no purchaser 'shall acquire any right, title or interest in and to a motor vehicle purchased by him unless and until he shall obtain . . . the certificate of title thereto,' non-deliv-

ery of the certificate of title does not prevent change of ownership as between the parties to the transaction. * * *."

Mauk's strongly relies on our earlier decisions for reversal as well as early interpretation made by the Nebraska Supreme Court of a statute nearly identical to section 321.45(2). However, we note that court has recently appeared to recognize the extreme inequities which can occur through rote operation of the statute. In *First Nat. Bank & Trust v. Ohio Cas. Ins. Co.*, 196 Neb. 595, 244 N.W.2d 209, 213, the court states:

"* * *. We have never stated that the certificate of title is always conclusive of ownership. To hold that a certificate of title procured by theft, forgery, fraud, or misrepresentation is conclusive would defeat the very purpose of the legislation. (Citation)."

We believe the proper interpretation of section 321.45(2) requires that as between immediate buyer and seller to a conditional sales agreement involving a motor vehicle, the certificate of title is prima facie evidence but not conclusive proof of ownership. To hold otherwise allows the statute to be used as a sword rather than a shield, a result certainly never intended by our legislature.

Applying the above enunciated principles to the undisputed evidence in the record before us, we hold Mauk's first assignment of error as untenable as Sandhorst had an ownership interest.

III. Mauk's next claims Sandhorst's action for conversion based on violation of the terms of the agreement is improper and that the trial court erred in submitting instructions on the assumption Mauk's had converted Sandhorst's truck. We disagree.

Both Colorado and Michigan recognize that failure to transfer a certificate of title does not preclude the buyer from bringing an action for breach of contract. *Bunch v. Signal Oil and Gas Company*, Colo. App., 505 P.2d 41; *Sroka v. Catsman Transit-Mix Concrete*, 350 Mich. 672, 86 N.W.2d 801. Pennsylvania recognizes a "resulting

trust" may operate in favor of a plaintiff similar to Sandhorst. *In re Estate of Summers*, 424 Pa. 195, 226 A.2d 197.

Sandhorst, however, after pleading the agreement and breach, asked for damages for a conversion by Mauk's. We have recognized conversion as a separate action. *Larsen v. Housh*, 259 Iowa 911, 146 N.W.2d 314; *Ontario Livestock Comm. Co. v. Flynn*, 256 Iowa 116, 126 N.W.2d 362.

"A conversion is properly defined as a distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his title or rights therein, or in derogation, exclusion or defiance of such title or rights." *Jensma v. Allen*, 248 Iowa 556, 562, 81 N.W.2d 476, 480, and citations.

We agree with the reasoning in *Lawrence v. Graham*, 29 Md.App. 422, 349 A.2d 271, involving facts very similar to those here presented, which holds an action for conversion lies.

IV. Mauk's next contends trial court erred in instructing the jury it had converted Sandhorst's truck. Its argument is twopronged. First, it argues the submitted instruction completely ignores section 321.45(2) as the exclusive means of obtaining ownership to a motor vehicle in Iowa. Second, it argues the instruction improperly removes the issue relating to the legal meaning of the parties.

Our previous discussion relating to section 321.45(2) disposes of the first contention; there is no reversible error on that basis.

The second is also untenable as both parties admitted the terms of the agreement and that Sandhorst paid $1000 down on the purchase of the truck with Mauk's agreement he would receive the title certificate when all payments were made. Both parties agreed that at the time Mauk's took possession of the truck, Sandhorst was not in default of his payments. There simply was no substantial evidence supporting Mauk's claim the sales agreement was merely an "incentive agreement." Under the unique state of the record the trial

court was required to instruct the jury Mauk's had converted the truck. See *Machmer v. Fuqua*, Iowa, 231 N.W.2d 606, 608 and citations.

V. Mauk's asserts the trial court erred in giving instruction 10 relating to allowance of exemplary damages. It argues there was insufficient evidence to warrant the instruction.

■■■ In considering whether there was evidentiary support for an instruction, we must give the evidence the most favorable construction it will reasonably bear. *Wilkes v. Iowa State Highway Commission*, Iowa, 172 N.W.2d 790, 800; *Bradt v. Grell Construction, Inc.*, Iowa, 161 N.W.2d 336, 340 and citations. Thus if there is some evidence bearing on the issue of willful or malicious conduct we will not disturb trial court's giving of the instruction.

■■■ Generally, exemplary damages may be awarded for conversion if it is characterized by malice or willful disregard of plaintiff's rights. 89 C.J.S. Trover & Conversion § 199, pages 660, 661; 18 Am.Jur.2d Conversion, section 92, pages 216, 217; *Inman v. Ball*, 65 Iowa 543, 546, 22 N.W. 666, 668.

In *Giltner v. Stark*, Iowa, 219 N.W.2d 700, 708, we state:

"The 'malice' required to permit an award of exemplary damages is something less than actual ill will or hatred toward another. When that state of mind is present there is actual malice. Legal malice is a fact to be found by the jury from the evidence in the case and may be established by showing wrongful or illegal conduct committed or continued with a willful or reckless disregard of another's rights, *McCarthy v. J. P. Cullen & Son Corp.*, 199 N.W.2d 362, 369 (Iowa 1972), and justifies submission of the issue."

See also *Hagenson v. United Telephone Company of Iowa*, Iowa, 209 N.W.2d 76, 82; *Syester v. Banta*, 257 Iowa 613, 628, 629, 133 N.W.2d 666, 676.

■■■ We find the evidence engendered a sufficient fact question to justify submission of the exemplary damage instruction.

VI. At the close of trial, Sandhorst applied under rule 134(c), R.C.P., for attorney's fees incurred in making proof of items at trial which had been previously requested to be admitted under rule 127, R.C.P.

Rule 134(c), R.C.P., provides:

"If a party fails to admit the genuineness of any document or the truth of any matter as requested under rule 127, and if the party requesting the admissions thereafter proves the genuineness of the document or the truth of the matter, he may apply to the court for an order requiring the other party to pay him the reasonable expenses incurred in making that proof, including reasonable attorney's fees. The court shall make the order unless it finds that

"(1) The request was held objectionable pursuant to rule 127, or

"(2) The admission sought was of no substantial importance, or

"(3) The party failing to admit had reasonable ground to believe that he might prevail on the matter, or

"(4) There was other good reason for the failure to admit."

Mauk's brief extensively details the admissions requested, the answers made to these requests and why the sanctions of rule 134(c) R.C.P., are not applicable here. Without analyzing each separate item we make a few observations. First, the admissions requested were not complex issues about which there could be much dispute at trial. The most obvious example is No. 1 where Mauk's denied the operation of exhibit A as the lease although the exhibit clearly denominated Sandhorst as lessor and Mauk's as lessee. Second, the requests were not ambiguous "half truths" which would require additional qualification at trial. Request No. 5 is another example of a simple request which was later proven at trial through Alva Mauk's testimony.

■■■ Generally the rule is that imposition of discovery sanctions is discretionary and the imposition of such sanctions will not be reversed unless there has been an abuse of discretion. *Bradshaw v. Thompson*, 6 Cir., 454 F.2d 75, 81; *Smiley v. Twin*

*City Beef Co.*, Iowa, 236 N.W.2d 356, 360 and citations.

Careful examination of the record reveals Mauk's was at fault in not answering several requests for admissions prior to trial. The trial court did not abuse its discretion in awarding reasonable attorney's fees to Sandhorst.

The judgment entered by the trial court is affirmed.

AFFIRMED.

MASON, RAWLINGS, and LeGRAND, JJ., concur.

UHLENHOPP, J., concurs specially.

UHLENHOPP, Justice (concurring specially).

I. I am not willing to go as far as the court in cutting down § 321.45(2) of the Code. Two matters are involved: (1) the title to or a security interest or other interest in the vehicle itself as the res, and (2) enforceability of an in personam claim apart from the res. I think § 321.45(2) controls the former; a person cannot have title to or a security or other interest in the res itself apart from the title certificate; by virtue of the statute the certificate *is* the title and the endorsement on the certificate *is* the security or other interest. See Professor Hudson's series of articles, Iowa Certificate of Title Law, 3 Drake L.Rev. 3, 4 Drake L.Rev. 86, 5 Drake L.Rev. 31, 14 Drake L.Rev. 36, 23 Drake L.Rev. 585. But a person may enforce his in personam rights against another person apart from the res, even though enforcement may lead to court-imposed transfer of title to or imposition of a security or other interest in the res absent harm to a bona fide purchaser or encumbrancer for value. Thus a buyer can enforce a contract to purchase a vehicle without reference to the title certificate. *Bunch v. Signal Oil & Gas Co.*, 505 P.2d 41 (Colo.App.); *Sroka v. Catsman Transit-Mix Concrete*, 350 Mich. 672, 86 N.W.2d 801.

II. Essentially the present situation is of the latter kind; Sandhorst is attempting to enforce his agreement and obtain damages from Mauk's Transfer for breach. The agreement is enforceable apart from title to the vehicle. Sandhorst is entitled to the money the jury awarded him.

The most troublesome point is Sandhorst's going beyond the pleading of the agreement and Mauk's Transfer's breach and pleading conversion in addition. See rule 69(a), Rules of Civil Procedure ("a short and plain statement of the claim"). I think Sandhorst did not prove a technical conversion, for he had not title to or an interest in the res. *Munier v. Zachary*, 138 Iowa 219, 114 N.W. 525 (necessity for an interest in the res). But Sandhorst pleaded and proved sufficient facts concerning the agreement and Mauk's Transfer's breach to entitle him to recover although he did not prove the additional fact of a technical conversion. A party is not required to prove more than necessary to entitle him to the relief asked. Code 1977, § 619.9 ("A party shall not be compelled to prove more than is necessary to entitle him to the relief asked for, or any lower degree included therein, nor more than necessary to sustain his defense."); *Raine v. City of Dubuque*, 169 Iowa 388, 151 N.W. 518 (unnecessary averments need not be proved).

I thus concur in affirmance.