STATE SAVINGS BANK,
Plaintiff–Appellee,

v.

ALLIS–CHALMERS CORPORATION, Allis–Chalmers Credit Corporation, and Howard L. Morrow, Defendants–Appellants.

No. 87–961.

Court of Appeals of Iowa.

Aug. 24, 1988.

384

Deborah Tharnish Craig and Donald A. Wine of Davis, Hockenberg, Wine, Brown, Koehn & Shors, Des Moines, for defendants-appellants.

Gerald J. Newbrough and John F. Lorentzen of Nyemaster, Goode, McLaughlin, Emery & O'Brien, Des Moines, for plaintiff-appellee.

Heard by DONIELSON, P.J., and HAYDEN and HABHAB, JJ.

HAYDEN, Judge.

State Savings Bank of Bedford and Allis–Chalmers (AC), now Deutz–Allis, acting as AC's corporate successor, both claimed security interests in an implement dealership's parts inventory. When the dealership was sold, a dispute arose between the bank and the manufacturer over entitlement to the proceeds from the sale of the dealership's parts inventory. The bank sued AC, its creditor corporation, and one of its employees. The bank recovered judgment for actual and punitive damages on theories of conversion and fraud. The defendants have appealed; they contend the evidence did not establish the elements of either conversion or fraud and did not warrant an award of punitive damages. For the reasons set out below, we affirm the holding of the district court.

I.

Fine Implement Company was an Allis–Chalmers farm implement dealer in Bedford, Iowa. During the period that Fine Implement was being purchased, the new owners executed a Dealer Sales and Service Agreement, Security Agreement, and Financing Statement in favor of AC. This agreement was signed on April 13, 1981, and the financing statement was filed with the secretary of state on April 15, 1981. The bank obtained a financing statement from Fine on April 1, 1981, however due to an oversight, the document was not filed

with the secretary of state until October 6, 1981. AC's security interest was in the parts inventory which had been acquired from AC. Most of Fine's other indebtedness was owed to State Savings Bank, Fine's primary lender.

When Fine was sold again in 1982, a dispute arose between the bank and AC over entitlement to the proceeds from the sale of the parts inventory. The bank filed the present suit against AC, its credit corporation, and AC employee Howard Morrow, who was AC's region manager and later region sales manager for the Iowa–Illinois area. The bank alleged the defendants had converted the parts inventory proceeds and had done so by fraud. The case was tried to the court, which awarded the bank both actual and punitive damages.

## II.

AC raises three primary issues on appeal.

First, the defendants claim the district court's judgment is incorrect on the conversion claim because AC could not convert parts as proceeds in which it had a superior interest to other creditors. As an alternative argument the defendants state the trial court had no basis for finding that Morrow personally converted the parts proceeds and, that even if a conversion occurred, the amount of damages calculated by the court is not appropriate.

Second, AC contends that the district court erred in finding for the bank on the fraud claim, because the bank did not prove by clear and convincing evidence all of the elements necessary to sustain a fraud finding under Iowa law.

Finally, defendants argue the bank is not entitled to punitive damages since it believes the bank did not establish legal malice, or entitlements to such damages under either its fraud or conversion claims.

Our review of this matter is limited to errors at law. Iowa R.App.P 4. The fact findings of the trial court have the effect of a special verdict and are considered binding if supported by substantial evidence.

*Midway Bank and Trust v. Moses*, 375 N.W.2d 292, 293 (Iowa App.1985).

Substantial evidence has been defined as evidence that "a reasonable mind would accept as adequate to reach a conclusion." *Briggs v. Board of Directors*, 282 N.W.2d 740, 743 (Iowa 1979). The possibility of drawing two inconsistent conclusions from the evidence does not prevent a trial court's finding from being supported by substantial evidence. *Id.*

## III.

1. *Conversion.* Defendants argue the parts or proceeds from the parts could not be converted, because AC had a superior security interest in the parts and further the trial court erred in finding more of the parts were covered by the AC security agreement.

Pursuant to Iowa Code section 554.9203 (1987), a security interest is not enforceable against the debtor or a third party with respect to collateral and does not attach unless:

a. [T]he collateral is in the possession of the secured party pursuant to agreement, or the debtor has signed a security agreement which contains a description of the collateral and in addition, when the security interest covers crops growing or to be grown or timber to be cut, a description of the land concerned; and

b. value has been given; and

c. the debtor has rights in the collateral.

Further, "when parties freely sign a security agreement covering certain property, the court will not alter clear language the parties employ." *Matter of California Pump and Mfg. Co., Inc.*, 588 F.2d 717 (9th Cir.1978).

■ The AC security agreement covered AC's replacement parts "now owned" by Fine Implement on April 13, 1981, the date the security agreement was executed, and replacement parts acquired from AC by the implement company after that date. The defendants claim replacement parts purchased by Fine Implement from the previous owners of the business were "now owned" at the time of the security agree-

ment. The trial court found the sales transaction between Fine Implement and the previous owners was not closed until April 20, 1981, so the parts could not have been "now owned" within the terms of the security agreement. We determine these findings were supported by substantial evidence and find no error of law.

■ We also do not agree with the defendant's assertion the trial court erred in finding the evidence did not establish that any of the implement companies' parts were covered by the AC security agreement. The burden was squarely on AC to prove it had a security interest in the parts. Iowa R.App.P. 14(f)(5). AC did not produce evidence such as invoices, purchase orders or inventories to show the additional parts were of a type that fell under the language of the security agreement. Thus, we do not believe the district court erred in its finding.

■ Next, defendants contend Morrow cannot be held personally liable for conversion because he did not personally exercise any dominion or control over the parts or proceeds. Conversion has been defined "as a distinct act of dominion or controls wrongfully executed over the chattels of another in denial of his right thereto." *Sandhorst v. Mauk's Transfer, Inc.,* 252 N.W.2d 393 (Iowa 1977). The interference must be so serious that the actor may justly be required to pay the other, the full value of the property. *Kendall/Hunt Pub. Co. v. Rowe,* 424 N.W.2d 235, 247 (Iowa 1988). Factors to be considered:

(2) In determining the seriousness of the interference and the justice of requiring the actor to pay the full value, the following factors are important:
(a) the extent and duration of the actor's exercise of dominion or control;
(b) the actor's intent to assert a right in fact inconsistent with the other's right of control;
(c) the actor's good faith;
(d) the extent and duration of the resulting interference with the other's right of control;
(e) the harm done to the chattel;
(f) the inconvenience and expense caused to the other.

Restatement (Second) of Torts § 222A(2). In addition, it is well settled in Iowa an agent is responsible for his acts of fraud and conversion, although they were committed in the course of business for his principal. *Haafke v. Mitchell,* 347 N.W.2d 381, 385 (Iowa 1984).

The district court's analysis finding Morrow had exercised control over the parts and the parts proceeds show a proper application of the factors listed above and is supported by substantial evidence.

In addition, we find no merit in the defendant's contention the trial court miscalculated the damages for conversion. We cannot say as a matter of law that no "reasonable mind would accept as adequate" these facts to reach this conclusion. *Briggs v. Board of Directors,* 282 N.W.2d 740, 743 (Iowa 1979). Thus, we affirm the damage determination of the district court.

■ 2. *Fraud.* The defendants next assert the trial court erred in holding for the bank on its fraud claim. The only issue defendants raise is that substantial evidence did not exist for the trial court to find the requisite intent or scienter. The Iowa Supreme Court has held scienter exists when the evidence shows a representation or nondisclosure was made in reckless disregard for its truth or falsity. *B & B Asphalt Co. v. T.S. McShane Co.,* 242 N.W.2d 279, 284 (Iowa 1976). Such issues are typically resolved on witness credibility, and credibility is best determined by the fact finder. *Capitol Sav. & Loan Assoc. v. First Financial Sav. & Loan Assoc.,* 364 N.W.2d 267, 271 (Iowa App.1984).

A trial court's finding of fact is equivalent to a special verdict. Iowa R.App.P. 4. It is binding on us if supported by substantial evidence, and it is so supported if it may be reasonably inferred from the evidence. *See* Iowa R.App.P. 14(f)(1) and *Beeck v. Aquaslide 'N' Dive Corp.,* 350 N.W.2d 149, 154 (Iowa 1984). When evaluating the sufficiency of evidence, we will "view it in the light most favorable to sustaining the trial court's judgment, and need only consider evidence favorable to the judgment, whether or not it is contradicted." *F.S. Credit Corp. v. Shear Elevator, Inc.,* 377 N.W.2d 227, 232 (Iowa 1985).

The bank contends and the trial court found, the defendants did not intend to hand over any of the proceeds of the implements parts to the bank and that Morrow intentionally misled the bank to believe otherwise so it would do what the defendants wanted it to do—release Fine Implements assets and loan money to the new buyers. Of course, the defendants did not admit these intentions but Morrow's testimony and other circumstances made them obvious. Morrow was on the stand for almost two days, and his credibility was thoroughly tested. Even if the defendants did not intentionally deceive the bank, their misrepresentations were at least made in reckless disregard of the bank's interests. Under these circumstances, we will not disturb the holding of the trial court.

We do not accept the contention of defendants the district court was mistaken in its calculation of damages for the fraud. The district court correctly applied the "benefit of the bargain rule"—its purpose is to put the defrauded party in the same position as if the fraudulent representations were true. *Cornell v. Wunschel*, 408 N.W.2d 369 (Iowa 1987). Although evidence here may be conflicting, we cannot not say that the trial court's calculation was not supported by substantial evidence.

3. *Punitive Damages.* Regarding the award of exemplary damages, the defendants claim that the trial court made three errors of law: the defendants did not prove malice necessary to support an award of punitive damages; no aggravating circumstances or outrageous conduct exist, sufficient to demonstrate entitlement to punitive damages; and the plaintiff did not show sufficient evidence to entitle it to punitive damages on its conversion claim.

Punitive damages may be appropriate in cases where the defendants have committed the intentional torts of conversion and fraud. *Cornell v. Wunschel*, 408 N.W.2d 369, 382 (Iowa 1987) (fraud); *Sandhorst v. Mauk's Transfer, Inc.*, 252 N.W.2d 393, 399 (Iowa 1977) (conversion). In *Holcomb v. Hoffschneider*, 297 N.W.2d 210, 214 (Iowa 1980), the supreme court stated that exemplary damages are not appropriate in every fraud case. There must be some aggravating factor such as malice or outrageous conduct. In *Kimmel v. Iowa Realty Co., Inc.*, 339 N.W.2d 374, 384 (Iowa 1983), the court observed the rule in *Holcomb* must be read in conjunction with the rule that malice sufficient to justify exemplary damages may be either actual or legal malice. The court stated: "To establish legal malice it need only be shown that wrongful or illegal conduct was committed or continued with a reckless disregard at another's rights." *Id.* In these matters we must give the evidence the most favorable construction it will reasonably bear. Thus, if there is evidence bearing on the issue of willful or malicious conduct, we will not disturb the trial court's findings. *Sandhorst v. Mauk's Transfer, Inc.*, 252 N.W.2d at 399.

In the present case we cannot say that the trial court as the trier of fact erred in awarding punitive damages to the plaintiff. There was evidence Morrow's acts were not inadvertent or careless, but he deliberately concealed information from the bank in disregard of the bank's rights. The evidence supports a finding of legal malice sufficient to justify punitive damages.

AFFIRMED.