J. Robert Lynch, J.
The respondents were arrested and charged with possession of slot machines in violation of section 982 of the Penal Law. They were brought before the Justices of the Peace in the towns respectively involved in Jefferson County. The machines were also brought before the particular Justices of the Peace according to the directive of section 983 of the Penal Law. Thereafter, this court, under section 57 of the Code of Criminal Procedure, issued a certificate directing the charges be prosecuted by indictment. They were presented to a Grand Jury in session at a term of this court. The Grand Jury did not indict.
By return of a show cause order, the District Attorney now seeks the destruction of the machines as provided by section 984 of the Penal Law. The respondents contend that the machines are not within the definition of section 982 of the Penal Law; that they are therefore not subject to destruction. Testimony was taken and argument held on the issue thus presented.
Although the statutes (Penal Law, §§ 984 — 985) do not make the destruction of the machines dependent on the outcome of the charge against the possessing defendant, there is no question that jurisdiction over the machines follows jurisdiction over the defendant up to the point where he is finally convicted, acquitted, discharged or not billed. Consequently this court acquired jurisdiction over the machines upon its removal to this court of the charges against the respondents.
These are all pinball machines of the same type. The field of play is an inclined surface containing holes into which a ball may drop and studded with bumpers which either rebound a ball according to the ball’s own force or impel it with an electrically motivated force. A manually operated horizontal striker puts the ball into play by propelling it to the top of the incline where gravity then brings it down the playing field. If it falls into no *161 other hole on the way, the hall goes out of'play by dropping into a hole at the bottom of the incline. This final hole is partially guarded by manually operated flippers which propel the ball back up the field of play for another run-down. Points are scored when the ball drops into a hole or strikes certain bumpers. The running point total is shown on a scoreboard.
The machine has only one ball, but for the price of the play it may be used a minimum of five times and an unlimited maximum. To illustrate, if in five turns with the ball, the player fails to score 2,000 points, the game is over; if he scores 2,000 or more points he gets a sixth turn. If he then adds a certain number of points or strikes certain bumpers, he gets a seventh turn, and so on indefinitely. The player cannot accumulate rights to another ball; they come but one at a time.
The machine has none of the gaffs and gimmicks usually associated with such devices: there are no provisions to shorten the odds by inserting extra coins; there are no pay-offs; there are no free games actually given or theoretical free games posted. The machine is in essence the ancient and respected game of bagatelle — with an important exception. It rewards chance or skill with, not a free game, but an extra ball. The sole issue here is whether or not this extra ball possibility makes the game illegal under section 982 of the Penal Law.
Counsel for the respondents has argued interestingly and learnedly that this machine is not a gambling device in any classic or dictionary sense of the word. True though this argument may be, yet it begs the question. The statute itself makes it clear that the Legislature, in a valid exercise of police power (People v. Swartz, 282 N. Y. 596), has chosen to extend the definition of gaming devices beyond the classic or dictionary definition of gambling.
Section 982 of the Penal Law, as it is pertinent here, makes unlawful any coin-insert machine which may be operated and ‘ ‘ by reason of any element of chance or of other outcome of such operation unpredictable by him, the user may receive * * * any * * * thing of value * * * or the user may secure additional chances or rights to use such machine ”.
Does the “additional chance ” or “right to use” of the statute mean at least another new and complete game or does it mean an additional opportunity to extend the same game?
In Scientific Mach. Corp. v. Simmons (181 Misc. 960) the court examined the legality of a machine, under section 982 of the Penal Law, which gave the player five balls for the initial price but which rewarded successful scores with additional balls. The court there concluded that the machine was an amusement *162 and not a gambling device as defined by the statute. The Appellate Division, Second Department (267 App. Div. 917) agreed “ that the machine is not a gambling device and does not violate section 982 of the Penal Law ’ ’.
Thereafter, in People v. Raziano (268 App. Div. 798) the Second Department examined another machine which rewarded the player with additional balls. The court concluded that the machine was a gambling device within the prohibition of the statute since the extra balls gave the user of the machine the ‘1 additional chances or rights ’ ’ prohibited. At the same time, the court expressly overruled its decision in the Scientific Mach. Corp. case, saying that “where experience has demonstrated initial error in defining the scope of novel legislation, such error should not be perpetuated by strict adherence to precedent ” (People v. Raziano, supra, p. 799).
In construction of a statute consideration must be given to the mischief sought to be remedied (McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 95). It is well known why the free game came under prohibition. It was too commonly being paid off by the owner rather than being played off by the player. The same temptation to mischief is presented by the extra ball; the difference is only one of degree.
The machines concerned in this application are in violation of section 982 of the Penal Law and must be destroyed.