Application of David ZERGA, Petitioner, For a Writ of Habeas Corpus directed to the Warden of the City Prison, New York County, and/or the Commissioner of Correction of the City of New York.

Application of Alfred URGO, Petitioner, For a Writ of Habeas Corpus directed to the Warden of the City Prison, New York County, and/or the Commissioner of Correction of the City of New York.

United States District Court
S. D. New York.
July 25, 1963.

Joseph Aronstein, New York City, for petitioners.

Frank S. Hogan, Dist. Atty., New York County (Michael R. Juviler, Asst. Dist. Atty., of counsel).

MacMAHON, District Judge.

These are petitions for writs of habeas corpus directed to officials of the City and State of New York, in whose custody petitioners are presently confined pursuant to judgments of the former New York City Magistrates' Court, Manhattan Gamblers' Court (now New York City Criminal Court), rendered May 31, 1962 after a joint trial.

Petitioner Zerga was convicted of the crimes of bookmaking and possession of records made by a bookmaker (N.Y.Penal Law, McK.Consol.Laws, c. 40, §§ 986, 986-b) and was sentenced to concurrent terms of imprisonment of five months and to a fine of $500.00 or fifty days' imprisonment. Petitioner Urgo was convicted of the crime of permitting a place to be used for bookmaking (N.Y.Penal Law § 986) and was sentenced to imprisonment for thirty days and to a fine of $300.00 or thirty days' imprisonment.

Petitioners have exhausted available state remedies, having appealed to the Appellate Term of the Supreme Court of the State of New York, First Department, which affirmed their convictions; leave to appeal to the New York Court of Appeals was denied (see N.Y.Code of Criminal Procedure § 520(1)). Petitioners did not apply to the Supreme Court of the United States for writs of certiorari.

Petitioners' challenge to their state court convictions is based on their contention that the evidence of their guilt was obtained by an unreasonable search and seizure in violation of their constitutional rights.

The facts upon which the present petitions are based are contained in the minutes of the state trial which are before the court. Independent examination of that record reveals that Patrolman Peter Kennelly, a conceded expert in bookmaking, testified that he and another officer were observing a candy store in broad daylight from across the street. On separate occasions the officer saw four unknown men enter, engage in short conversations with petitioner Zerga, and hand Zerga money. Zerga handed the second man a paper which, from its form, size and color, appeared to be a "scratch sheet" or racing form. After the fourth man left, petitioner Urgo entered a telephone booth located inside the store, lifted the receiver, and motioned to Zerga, who then entered the booth and placed the receiver to his ear. Urgo then handed Zerga a slip of white paper.

Shortly thereafter, Patrolman Kennelly and his fellow officer, Patrolman Charles Catherole, entered the store to investigate further and to make an arrest if the circumstances warranted it. Patrolman Kennelly believed from his observations that a crime had been committed in his presence. The officers had no search or arrest warrant.

As the officers entered the store, petitioner Urgo shouted "the front Dave". Petitioner Zerga replaced the telephone receiver, and a white piece of paper dropped from his hand to the floor. Patrolman Kennelly grabbed the paper and examined it. The paper, which was introduced in evidence over petitioners' objection that it was obtained by an unreasonable search and seizure, contained various bets on horse races. After examining the paper, Patrolman Kennelly arrested petitioner Zerga and searched him. Zerga made various admissions. Patrolman Catherole, who was also a witness in the state trial, spoke to petitioner Urgo, who also made various admissions.

Zerga testified that the paper in question dropped from his hand when the officer rushed over to him, but that he did not throw it away. Later, he testified that he first saw the paper when he was "fooling around," picked it up from the floor, and threw it down again.

Petitioners presently contend, in substance, (1) that the officers' entry of the candy store was unlawful, and (2) that Officer Kennelly had no right to examine the slip in question, since it was still in the possession of petitioner Zerga, who had not abandoned it. Unquestionably, there is no need for a hearing on these issues since the applicable facts are all in the record of the state trial and there is no claim that the state proceedings were inadequate. (See Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).) This record amply supports the state court's finding that the questioned evidence was not obtained by an illegal search and seizure.

The propriety of the officers' entry into the candy store was well established. The store was a public place. The events took place in broad daylight, shortly before noon, apparently during normal business hours. This is shown by the easy access of the four unknown males and of the officers. It is clear that the premises were open to the public, and there is neither claim nor evidence to the contrary. Moreover, the officers entered in good faith to investigate further, not, as petitioners urge, to arrest and search. Patrolman Kennelly intended to arrest only if the circumstances, disclosed by the investigation, warranted it.

Similarly, there was ample evidence to set forth petitioner Zerga's abandonment of the slip of paper when the officers entered. (See Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924).) Urgo shouted to him, "the front Dave", a call which, under the circumstances here portrayed, can only be construed as a warning. In response, Zerga dropped the slip of paper. His guilty abandonment of the slip is further confirmed by his acknowledgment at trial that he was aware that the slip probably bore bets on horses, and by his further admission in court, at one point of cross-examination, that he threw the paper down—testimony directly at odds with his present contention. In short, the inference of deliberate abandonment is fully supported by the record.

It is thus clear that there was neither an unlawful entry, nor an illegal search and seizure. Accordingly, petitioners' constitutional rights have not been violated, and there is no warrant for interfering with the state court's determination of the issues now raised.

The petitioners' contentions are without merit to the point of frivolity. The petitions are therefore denied and certificates of probable cause will not be issued.

So ordered.