C. A. LARSEN, appellee, v. CHARLES N. HOUSH, appellee, and AUTOMOBILE UNDERWRITERS, attorney in fact for State Automobile and Casualty Underwriters, appellant.

No. 52239.

 

NOVEMBER 15, 1966.

 ██

Weible & Stipp, of Forest City, for appellant.

Erwin L. Buck, of Britt, for appellee Charles N. Housh.

Linnan, Lynch & Straub, of Algona, for appellee C. A. Larsen.

SNELL, J.—This was an action at law for the conversion of the sale proceeds of 69 head of cattle sold at auction. The proceeds were paid to the wrong man from whom there seems to be little or no chance of recovery.

Plaintiff lives at Klemme, Iowa, and is in the business of buying and selling livestock. He has a cattle buying agent in Sidney, Montana.

Ed H. Bohlman of Bismarck, North Dakota, d/b/a Bohlman Truck Line, was a trucker.

Defendant Automobile Underwriters is attorney in fact for State Automobile and Casualty Underwriters, hereinafter referred to as the insurance company, the cargo insurance carrier for Bohlman.

Defendant Charles N. Housh is the owner and operator of a sale barn in Forest City. The business is commission livestock selling. It is operated under the trade name of "The Cow Palace" and sometimes as "Forest City Auction Company."

The controlling facts in the case appear without substantial

controversy and obviously were found by the trial jury to be as follows.

Early in November 1962 plaintiff, through his agent in Montana, purchased 191 head of feeder cattle and made arrangements to have them trucked from Mandan, North Dakota, to Klemme, Iowa, by Bohlman, the trucker. The cattle were paid for by drafts drawn on plaintiff's account.

The cattle were loaded into two of Bohlman's trucks. One truck arrived safely at Klemme. The cattle therein were unloaded and delivered to plaintiff. The other truck carrying 94 head of cattle overturned near Thompson, Iowa. Twenty-five of the cattle were killed or so injured that they had to be killed. The remaining 69 cattle were so injured and damaged as to make them unsalable as feeder cattle.

Plaintiff learned of the upset and went to the scene of the accident. He later testified: "We told them we couldn't accept the cattle in that kind of condition. * * * We couldn't take them down to our yard and sell them as good cattle." The cattle had been in excellent condition when loaded.

After some difficulty because of their wildness, the surviving cattle were rounded up and taken by one of the truck drivers to The Cow Palace, the sale barn at Forest City.

The trucker's insurance company was promptly notified by telephone of the upset and sent its local representative and attorney to investigate. Plaintiff was told by agents of the insurance company that an adjuster would be sent to take care of the loss. Plaintiff had nothing more to do with the cattle.

The insurance company's representative investigated at the scene of the upset and then went to the sale barn. No one admits directing the sale of the cattle at an auction sale then in progress, but someone did and no one objected and the act of selling the cattle is not the present issue.

Something had to be done with the cattle to prevent further loss. The cattle were sold. After the sale defendant Housh, at the direction of the insurance company's representative, caused a check for the amount of the net proceeds to be written payable to Ed H. Bohlman. The check was delivered to Bohlman's truck driver who returned to Bismarck and delivered the check to

Bohlman. Bohlman cashed the check but has accounted to no one. From the record we assume that Bohlman is insolvent. The insurance company paid plaintiff for the cattle that were killed. The present controversy involves the proceeds of the auction sale and the remittances to Bohlman.

Several conferences with interested parties were sought and tentatively arranged but Bohlman never appeared.

In an action at law prior to the case at bar plaintiff sued Bohlman. Therein it was found Bohlman's failure to pay to plaintiff the net proceeds from the sale of the cattle was wrongful. Judgment in favor of plaintiff and against Bohlman was entered. The judgment against Bohlman being uncollectible the present action against defendants Housh, the owner of the sale barn, and Bohlman's insurance company, was instituted. This case was tried to a jury. The jury found for plaintiff and against the insurance company and for defendant Housh.

The insurance company has appealed and will be referred to as defendant.

I. Prior to trial and in this appeal defendant has urged that plaintiff's action and judgment against Bohlman constituted an election of remedies and bars the present action. The trial court in adjudicating law points did not agree. Neither do we.

While it is, of course, true that plaintiff would not be entitled to be paid twice, he has not been paid and his action against Bohlman was not a waiver of his claim against the insurance company. The action against Bohlman was to recover money wrongfully retained. The action against defendant insurance company is for causing the money to be paid to the wrong person in the first place.

Over simplified but in substance plaintiff's position is that he tried to recover from the man who has his money. Not getting his money from Bohlman plaintiff now pursues the defendant who caused the money to be paid to the wrong man. There is no such inconsistency as to make election of remedies a good defense. There is a chain of events but no conflict between plaintiff's positions. There is no innocent third party involved or harmed. If plaintiff had collected on his judgment against Bohlman defendant insurance company would have been relieved.

916

Plaintiff's attempt to collect from Bohlman being unsuccessful does not relieve defendant insurance company from responsibility for its own separate tort.

Kearney Milling and Elevator Co. v. Union Pacific Railway Co., 97 Iowa 719, 723, 66 N.W. 1059, 59 Am. St. Rep. 434, quoting from Thompson v. Howard, 31 Mich. 309, 312, says:

" 'A man may not take two contradictory positions, and where he has a right to choose one of two modes of redress, and the two are so inconsistent that the assertion of one involves the negation or repudiation of the other, his deliberate and settled choice of one, with knowledge, or means of knowledge, of such facts as would authorize a resort to each, will preclude him thereafter from going back and electing again.' 'Any decisive act of the party, with knowledge of his rights and of the fact, determines his election, in the case of conflicting and inconsistent remedies.' " (Citations)

In Zimmerman v. Robinson & Company, 128 Iowa 72, 73, 74, 75, 102 N.W. 814, 5 Ann. Cas. 960, this appears:

"It not infrequently happens that for the redress of a given wrong or the enforcement of a given right, the law affords two or more remedies. Where these remedies are so inconsistent that the pursuit of one necessarily involves or implies the negation of the other, the party who deliberately and with full knowledge of the facts invokes one of such remedies is said to have made his election, and cannot thereafter have the benefit of the other. To the proper application of this rule at least three things are essential: (1) There must be in fact two or more concurrent remedies between which the party has the right to elect; (2) the remedies thus open to him must be inconsistent; and (3) he must, by actually bringing his action, or by some other decisive act, with knowledge of the facts, indicate his choice between these inconsistent remedies. * * *

" 'An election exists only where two or more inconsistent remedies are open to a party, and he is at liberty to pursue any one of them. It cannot exist between consistent concurrent remedies, or between a rightful remedy and one which the party may mistakenly suppose to be applicable.' "

In Sackett v. Farmers State Bank of Boone, 209 Iowa

487, 491, 228 N.W. 51, it is said: "The doctrine of election of remedies has application only to inconsistent remedies." That case involved certificates of deposit issued to plaintiff's intestate. Defendant-bank pleaded payment to the holder to whom the certificates had been endorsed and an election of remedies by plaintiff through a former action. The right to possession of the certificates or the proceeds thereof had been litigated and determined in Colorado in an action between plaintiff and the person who had collected. The Iowa court held that the litigation in Colorado was an election of remedies and plaintiff had fixed the status of the parties. It was said:

"On its face, the money judgment was a complete remedy. Plaintiff's answer to this suggestion is that his judgment would be a complete remedy, and that the bar of the election would be complete if satisfaction of the judgment were had. At this point, plaintiff relies upon the analogy of a right of action against joint wrongdoers. Such an action may be prosecuted by the injured party either severally or jointly. A judgment against one does not operate as a bar to an action against the other until satisfaction is had. This is not such a case, and the rule of law has no application hereto. The defendant-bank was not a joint wrongdoer with Palmer. It was simply one of the innocent parties who suffered potential injury by her wrongful act. As between the two innocent parties, the right of election of remedies was primarily with the plaintiff. * * *." (Loc. cit. 493)

Neither the factual situation nor the conclusion based thereon is controlling here. In the case before us the defendant insurance company is not the innocent party. Defendant originated the wrong that caused the money to be paid to the wrong party.

 In point is Home Savings Bank of Iowa Falls v. Otterbach, 135 Iowa 157, 112 N.W. 769, 124 Am. St. Rep. 267. That case involved the diversion of funds. It was held that an unsuccessful attempt to enforce liability against one of two parties, jointly liable for a conversion, does not constitute an election of remedies which will relieve the other from liability. It was also held that a settlement with one of two parties jointly liable for conversion must be such as to fully relieve him from further liability, to operate as a discharge of the other. See also Cushing

918

v. Hederman, 117 Iowa 637, 639, 91 N.W. 940, 94 Am. St. Rep. 320; Way v. Waterloo, Cedar Falls & Northern Railroad, 239 Iowa 244, 29 N.W.2d 867, 174 A. L. R. 723.

We agree with the trial court that plaintiff's action against Bohlman stated a cause of action for conversion and is not inconsistent with the present action and that the doctrine of election of remedies is not applicable.

II. Neither the precise form of the preceding action nor the form of action in the case before us is very important. We are no longer concerned with the old common-law forms of action. "All * * * technical forms of action or pleading are abolished." Rule 67, Rules of Civil Procedure. See also Weaver Construction Co. v. Farmers National Bank, 253 Iowa 1280, 1293, 115 N.W.2d 804.

III. Defendant complains that over objection some leading questions were asked and answered. We have reviewed the record and find no reversible error relative thereto. To the extent that the questions were leading they related to matters that were admitted or appeared without controversy.

Defendant insurance company was promptly notified of the upset by telephone. Defendant's representative investigated and was in the office of the sale barn when the sale proceeds were computed and he directed the delivery of the check to the truck driver. Assuming, arguendo, but not deciding that some leading questions were asked and answered we cannot reverse because of leading but nonprejudicial questions going to uncontroverted matters.

IV. Defendant argues that when plaintiff refused to accept the cattle something had to be done and he impliedly consented to their sale and resultantly there could be no conversion.

That plaintiff refused to accept the cattle was admitted. The propriety of the sale of the cattle is not challenged. Who actually ordered the sale of the cattle to prevent further loss is not, in our opinion, controlling.

Bohlman was a commercial carrier of cargo. His liability for loss and damage to plaintiff's cattle has not been challenged. Defendant's insurance policy issued to Bohlman insured against the peril of upset. That defendant insurance company was with-

in the chain of liability appears without dispute. See chapter 516, Code of Iowa.

The fact that there may have been a right, coupled with practical necessity, to sell the cattle does not alter the fact that the culminating act was after the sale when defendant directed diversion of the funds to one from whom plaintiff has been unable to recover.

In Jensma v. Allen, 248 Iowa 556, 562, 81 N.W.2d 476, we said:

"Defendant's argument seems to assume or imply some technical reason or reasons why this action for conversion would not lie. We have already said the property taken over by the act of defendant was personalty. A conversion is properly defined as a distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his title or rights therein, or in derogation, exclusion or defiance of such title or rights."

In Brown v. Dubuque Altar Mfg. Co., 163 Iowa 343, 346, 144 N.W. 613, we quoted 2 Cooley on Torts (3d Ed.) 859, as follows:

" 'Any distinct act of dominion, wrongfully exerted over one's property, in denial of his right or inconsistent with it, is a conversion. The action of trover, being founded on a conjoint right of property and possession, any act of the defendant which negatives or is inconsistent with such right amounts in law to a conversion. It is not necessary to a conversion that there should be a manual taking of the thing in action by the defendant; it is not necessary that it should be shown that he has applied it to his own use. Does he exercise a dominion over it in exclusion or defiance of the plaintiff's right? If he does, that in law is a conversion, be it for his own or for another person's use.' "

In United States v. Fleming, 69 F. Supp. 252 (N. D. Iowa), a case involving conversion of the proceeds of the sale of corn, Judge Graven quoted the above statement with approval. Judge Graven continued (pages 260, 261):

"In the case of Farmer, Thompson & Helsell v. Bank of Graettinger, 1906, 130 Iowa 469, 476, 107 N.W. 170, 172, the court states in regard to a converter as follows: 'And that his

acts were dominated by good faith will not relieve him from the consequences.' In Bowers, The Law of Conversion (1917) p. 2, it is stated: 'Nor is it necessary that the property be applied to the use of the defendant, nor even of a third person. The element of controlling influence is the owner's loss, not the wrongdoer's benefit.'

"There could be successive converters of the same property or joint converters of the same property. A party wronged by the successive conversions or by a joint conversion has a cause of action against all the participants."

We are convinced that defendant's dominion over the proceeds of the cattle sale constituted a conversion.

V. This case was tried to a jury. As stated in the preceding division we do not think who directed the sale of the cattle was the controlling issue. The instructions as a whole were overly favorable to defendant.

Defendant objected to and argues here that there was prejudicial error in instruction No. 9. This instruction dealt with conversion incident to the sale of the cattle. The last sentence was as follows:

"But if the Automobile Underwriters, through its agents, did not affirmatively direct the sale of said cattle or participate therein, then the said Automobile Underwriters could not be liable for conversion."

There was evidence from which the jury could have found that defendant's representative directed the sale and unquestionably acquiesced therein. Throughout the instructions a heavy burden was placed on plaintiff. We find no basis for serious complaint by defendant.

VI. Defendant requested five separate instructions. Requested instruction No. 4 was given. Defendant assigns error in the failure to give the others as requested.

Defendant's requested instructions Nos. 1 and 2 dealt with the rights of the trucker and his insurance carrier in selling the cattle. We have considered these questions in preceding divisions. Requested instruction No. 3 would have told the jury that defendant insurance company had the right and duty to send the proceeds of any cattle injured during carriage and sold because

of failure of the owner to receive the goods to Bohlman and that **defendant had no duty to plaintiff.**

The giving of such an instruction would have been improper under the issues and evidence in this case.

Requested instruction No. 5 followed Iowa Uniform Instruction No. 1.10 and was a correct statement of the law but unnecessary in this case. The jury was fully instructed on the weight and credit of the testimony and there was no such impeachment of any witness on any material matter as to require the special instruction on impeachment.

VII. Defendant argues that the verdict of the jury is inconsistent in finding for defendant Housh and from the same evidence finding against defendant insurance company. We do not agree.

There was evidence from which the jury could and obviously did find that the crucial transaction leading to plaintiff's loss was under the direction and control of the insurance company.

VIII. The jury verdict was amply supported by the record. We find no reversible error.

The case is—Affirmed.

All Justices concur except Thornton, J., not sitting.