Francis J. ZEMAN, Appellant,

v.

CANTON STATE BANK, a Minnesota corporation, Appellee.

No. 55819.

Supreme Court of Iowa.

Oct. 17, 1973.

Sheridan, Sheridan & Mellick, Ltd., Waukon, for appellant.

Thomas C. Lynch, Decorah, for appellee.

Heard before MOORE, C. J., and MASON, REYNOLDSON, HARRIS and McCORMICK, JJ.

HARRIS, Justice.

Plaintiff appeals judgment for defendant in a conversion action brought against a

Minnesota bank arising from prior foreclosure proceedings. We affirm.

Francis J. Zeman (Zeman) operates a farm in Winneshiek County, Iowa. On January 13, 1966 he secured a loan from the defendant, Canton State Bank, a Minnesota corporation (the bank). Zeman executed a combination note and chattel mortgage, making a farm tractor security for the loan. According to the instrument the property was in the possession of Zeman at his "address" at Canton, Minnesota and was to be kept in Minnesota. The terms of the instrument were at some variance with the bank's understanding the tractor would be at Zeman's farm in Winneshiek County, Iowa. The instrument accorded the bank, as mortgagee, the usual rights of immediate possession and foreclosure upon default.

Zeman defaulted on his obligation after which the bank, believing the tractor to be in Iowa, brought a foreclosure action in Winneshiek District Court. Zeman failed to appear in that action and judgment was entered against him. The sheriff thereafter tried without success to locate the tractor in Iowa for seizure. The tractor was subsequently found by the bank in a dismantled condition at Zeman's brother's farm in Minnesota. It was seized by the Minnesota sheriff on the bank's demand under an out of court procedure which contemplated the sale of the property in satisfaction of the obligation. Sheriff's fees, costs, expenses and attorney's fees were thereby incurred. On July 19, 1966 the Minnesota sheriff posted notice of foreclosure sale.

On July 26, 1966 Zeman paid the Iowa judgment, including costs and statutory attorney's fees which of course did not include any of the expenses incurred in connection with the seizure of the property in Minnesota. On August 5, 1966 the bank learned the Iowa judgment had been satisfied. The following day the tractor was sold at the Minnesota sheriff's sale. The sheriff deducted his costs and remitted the net proceeds of $311.30 to the bank. The bank applied $41 thereof to the repossession costs incurred in trucking the dismantled tractor to the sale site and applied the $270.30 balance to attorney's fees incurred in connection with the seizure in Minnesota.

Zeman was not served any notice after the original notice in the foreclosure suit. The original notice incorporated a demand for the seizure and sale of the property in the course of that action but of course did not distinguish any possible seizure and sale in Minnesota. Upon receiving knowledge the Iowa judgment was paid, the bank was confronted with either absorbing the expenses incurred in the Minnesota proceeding or going forward with the sale. Believing it still had the right to proceed in spite of payment of the Iowa judgment, the bank proceeded.

Zeman thereafter brought this action for conversion on the claim all interests of the bank terminated when the Iowa judgment was satisfied. The matter was tried and submitted to the court which, applying what it found to be the Minnesota law, entered a judgment for the defendant bank. On appeal Zeman assigns two errors. He claims the trial court erred in holding he failed to prove the Minnesota sheriff's sale was unlawful. He also claims it erred in holding all significant events are governed by the Uniform Commercial Code of Minnesota. We hold the trial court was right on Zeman's first assignment. Any error under his second assignment avails Zeman nothing.

I. We have no difficulty in determining Minnesota law applies to Zeman's action for conversion. In former times we would have applied it under the doctrine of lex loci delicti. This rule, the substantive law of the place of the wrong governs regardless of the law of the forum, had long application in Iowa and throughout the country. See Fessenden v. Smith, 255 Iowa 1170, 124 N.W.2d 554. In a series of cases culminating in Fuerste v.

Bemis, 156 N.W.2d 831 (Iowa 1968) and Berghammer v. Smith, 185 N.W.2d 226 (Iowa 1971) we rejected the lex loci delicti doctrine and supplanted it with the most significant relationship test. Under that test the local law of the state having the most significant relationship with the occurrence and with the parties controls their rights, obligations and liabilities in tort. Considerations include: place of injury, place of conduct leading to the injury, domicil of the parties, and the place where any relationship between the parties is centered. See Restatement of Conflict of Laws, Second, section 379.

■ Applying these considerations to the facts presented we find Minnesota clearly had more significant contacts than Iowa. This suit complains of a Minnesota's sheriff's sale held after the bank was notified the Iowa judgment had been satisfied. The tractor in question was always in Minnesota. The loan was made and the papers were signed there. The bank is a Minnesota corporation which has always done business in Minnesota. There is no claim of any misconduct or wrongdoing in Iowa. We hold Minnesota law is controlling.

II. What Minnesota law do we apply? We are bound to apply what we find to have been Minnesota's law at the time of the claimed conversion.

■■ Foreign law must be pleaded and proven. We may not take judicial notice of foreign law in the absence of such pleading and proof. Eddards v. Suhr, 193 N.W.2d 113 (Iowa 1971). In the absence of any pleading or proof it will be presumed to be the same as ours. In re Estate of Kees, 239 Iowa 287, 31 N.W.2d 380; In re Maintenance of Newhouse, 233 Iowa 1007, 9 N.W.2d 372. See also Goodrich on Conflict of Laws, section 80, page 195. In Iowa we indulge in this presumption as to both statutory and common foreign law. In re Estate of Drumheller, 252 Iowa 1378, 110 N.W.2d 833, 87 A.L.R.2d 1233.

■ There was wholesale failure to plead or prove Minnesota law in the trial below. There was no pleading under rule 94, Rules of Civil Procedure, referring to any Minnesota "statute by plain designation" so as to allow "the court (to) judicially notice such statute." On appeal counsel for Zeman attempts too late to remedy the failure by citing Minnesota law in his brief. We cannot judicially notice these statutes when the trial court was not asked to. Eddards v. Suhr, supra.

■ The bank did call a qualified expert on Minnesota law. But, except for testifying reasonable attorney's fees and costs were collectible in foreclosure proceedings, he merely stated the Uniform Commercial Code became effective in Minnesota July 1, 1966, just three days prior to its effective date in Iowa. The trial court held and the bank urges on appeal the Uniform Commercial Code is the proven law of Minnesota even though not pleaded. Even if it had been pleaded we could not apply the Uniform Commercial Code to Zeman's claim by its express language. Section 10–102(2) of the Uniform Commercial Code (adopted in Iowa as section 554.10101, The Code) states in part:

" * * *

"Transactions validly entered into before the effective date specified in this section and the rights, duties and interest flowing from them remained valid thereafter and may be terminated, completed, consummated or enforced as required or permitted by any statute or other law amended or repealed by this chapter as though such repeal or amendment had not occurred."

Under these authorities we cannot, on this record, directly apply Minnesota law. There was no evidence of what it was and no request to judicially notice any Minnesota statutes. We cannot apply the Uniform Commercial Code because it was not pleaded and because it calls for the application of former law in transactions existing on its effective date. There is neither pleading nor proof of what that former law was.

We turn then to Iowa law on mortgage foreclosures, not because it would apply directly, but to describe what we must presume to have been the law of Minnesota. The problems ordinarily encountered in the application of foreign law become much more complex when it has not been proven and we resort to the presumption. The problems are separately made much more complex when local law has since been changed or the foreign law is known to have since been changed (see Berghammer v. Smith, supra). Here we must invoke the presumption in a situation where both our law and the Minnesota law has since been changed. Should we presume Minnesota's law to have been the same as Iowa's was then or to have been as it is now? We are spared a part of the difficulty by reason of the preservation of rights and obligations under the Uniform Commercial Code, making Iowa's law as to this transaction the same now as it was then.

One might well challenge the validity of making the presumption of foreign law conform, in point of time, with the chronological development of local law. The presumption is invoked only of necessity, without any real hope it squares with the actualities of the foreign law to be applied. It could be argued there is no more logic in presuming the foreign law to be as ours was at the time in question than to be as it is now. We believe in this instance there should be conformity in time because the Uniform Commercial Code became effective in the two states nearly simultaneously, because that Code preserved former law in cases of this sort, and because it is accordingly so apparent the former law in Minnesota was not the same as commercial law is now in either Iowa or Minnesota. We invoke the presumption on the basis of Iowa law prior to the effective date of the Uniform Commercial Code.

III. Prior to July 4, 1966 a separate Code chapter prescribed the procedure to foreclose chattel mortgages. The repeal of that chapter (chapter 652, The Code, 1962) was simultaneous with the effective date of the Uniform Commercial Code. The specified steps could be waived by the mortgagor in provisions written into the instrument. The general rule throughout the country seems to allow the holder of a chattel mortgage to proceed to satisfy his debt by nonjudicial proceedings provided the parties have agreed. 14 C.J.S. Chattel Mortgages § 365, page 1020, 15 Am.Jur.2d, Chattel Mortgages, section 214, page 377.

Zeman's claim the seizure was unlawful stands on the single legal proposition discussed in the following division. The record shows he took the same position in the trial court. There is evidence Zeman did not receive notice of the seizure and sale in Minnesota. Even if it appeared notice was not waived in the mortgage itself he cannot benefit from a failure to notify him further after the original notice was served on him of the Iowa suit. He made no claim in district court the seizure was unlawful for the failure of notice. Such a theory is not assigned as error or specified as a brief point on appeal. It is mentioned only to urge a showing of malice was made. Although there was no assignment of error having to do with exemplary damages Zeman's counsel does insert a brief point on the subject in his brief. It is only in this connection that he mentions the claimed failure of notice. Questions or issues not presented to and passed upon by the trial court cannot be raised or reviewed on appeal. Quad County Grain, Inc., v. Poe, 202 N.W.2d 118 (Iowa 1972). Errors not stated or argued on appeal are waived. Farm Service Company of Emmetsburg v. Askeland, 169 N.W.2d 559 (Iowa 1969).

IV. In order to establish his right to recover for conversion it was Zeman's burden to prove the bank wrongfully exerted a distinct act of dominion over his tractor in denial of or inconsistent with Zeman's rights and interests therein. Larsen v. Housh, 259 Iowa 911, 146 N.W.2d 314; Jensma v. Allen, 248 Iowa 556, 81

N.W.2d 476. The dominion exercised over Zeman's tractor could amount to a conversion only if it was wrongful. The keystone basic to Zeman's case, then, is his claim the mortgage lien merged into the judgment and terminated when the judgment was satisfied. Over this keystone Zeman builds his whole case. It supports not only his claim the seizure and sale were unlawful but is the necessary basis as well for the application he seeks of various rules relating to the law of judgments. Zeman argues: (1) a judgment will not be enforced in other states if it has been discharged in the state of rendition; (2) it will be collectable in other states only in the amount it is collectable in the state of rendition; and (3) the bank had to sue on the judgment in Minnesota in order to collect on the judgment there. These alternative propositions would be material only if it appeared the bank was proceeding in Minnesota on the Iowa judgment. Without Zeman's keystone (his insistence the mortgage lien merged into the judgment and was dissolved when the judgment was satisfied) his claim the seizure and sale was wrongful will fall. His other supporting arguments, grounded on the propositions from the law of judgments, will also fall because the bank can then claim it proceeded on the basis of rights given in the chattel mortgage.

■ Zeman's basic proposition does fall. It would be a poor rule which would weaken a lender's claim over secured property by the taking of judgment. We rejected such a contention long ago. In Hamilton v. Henderson, 211 Iowa 29, 230 N.W. 347 we stated the controlling issue of that appeal to be as follows: "* * * Did (mortgagors), by obtaining judgment on the notes in an action at law, waive the lien of the chattel mortgage held by them, or is the judgment rendered in the action at law an adjudication and bar of any right of (lenders), to now, in an action in equity, seek the enforcement of their chattel mortgage lien upon the property cov-

ered thereby? * * *." Citing earlier Iowa authorities we held "(t)he judgment did not merge the lien of the mortgage, but was simply a means of effectuating and enforcing that lien." While we have not been called upon recently for the application of this rule we are in accord with a pronouncement of the Supreme Court of New Mexico in the case of Tindall v. Bryan, 54 N.M. 114, 215 P.2d 355. The opinion cites 2 Freeman on Judgments, 5th Ed., sections 585–586; Restatement of the Law, Judgments, section 47, comment d and various other authorities. It holds there is no merger of a mortgage lien into a judgment taken upon default. We adopt from the Restatement of the Law, Judgments, section 47, comment d at pages 184–185 the following:

"* * * Although by the judgment the original cause of action is extinguished and a new cause of action is created, advantages to which the plaintiff was entitled with respect to the original cause of action may not be destroyed by the judgment. Thus, if a creditor has a lien upon property of the debtor and obtains a judgment against him, he does not thereby lose the benefit of the lien. * * *."

It is to be noted the action was brought in Iowa in the mistaken belief the tractor was here. The proceedings in Minnesota were undertaken after it was learned the tractor was there. Both the action here and the proceedings there were within the rights given the bank in the chattel mortgage. While the record will not support any charge Zeman misled the bank into believing the tractor was in Iowa it clearly shows the bank was having difficulty finding it and collecting on a secured obligation. The bank was fully justified under the circumstances in resorting to the rights given in the instrument to incur the necessary additional expenses of collection.

■ We believe and hold the bank was not precluded by the entry or satisfaction of judgment in Iowa from proceeding in

Minnesota on the basis of rights given in the chattel mortgage.

Affirmed.

MOORE, C. J., and REYNOLDSON and McCORMICK, JJ., concur.

MASON, J., dissents.