STATE of Iowa, Appellee,

v.

MERCHANDISE SEIZED, Appellant.

No. 55510.

Supreme Court of Iowa.

Feb. 19, 1975.

Getscher, Redd & Getscher, Hamburg, for appellant.

Richard C. Turner, Atty. Gen., Thomas D. McGrane and Robert D. Jacobson, Asst. Attys. Gen., and Robert F. Leonard, County Atty., for appellee.

Heard before MOORE, C. J., and RAWLINGS, LeGRAND, HARRIS and McCORMICK, JJ.

RAWLINGS, Justice.

The ultimate question to be here resolved is whether the court from which appeal is taken erred in ordering forfeiture of pinball machines and pornographic material seized. We affirm in part, reverse in part.

October 27, 1971, the Fremont County Sheriff sought and obtained from district court judge a warrant for the search of Everett Beck's home and business premises at 1022 Main Street in Hamburg. The supportive information, per an attached affidavit executed by Donald E. Richie, a Council Bluffs police detective, listed books, magazines and films of a pornographic nature as subjects of the proposed search. The warrant which thereupon issued likewise generally described the property for which a search was to be made.

As a result of the attendant search some books and other items described as pornographic materials found in Beck's residence and enclosed attachments thereto were seized. In addition, the officers took possession of eight pinball machines found at time of seizure on the business portion of the property.

October 28th notice was given Beck to the effect he could appear November 10, 1971 and show cause, if any, why described articles seized should not be forfeited. See The Code 1968, Section 751.16.

Beck then filed a "Motion to Quash Search Warrant and Hearing on Search Warrant". His motion for a continuance was granted.

December 7th the forfeiture hearing was held.

January 17, 1972, trial court overruled Beck's motion to quash.

March 10th an order was entered forfeiting all personalty seized. Trial court further directed destruction of the pinball machines but ordered the pornographic materials be held for evidential use in criminal proceedings.

In support of a reversal Beck asserts 11 overlapping assignments of error. Reduced to bare essentials he thereby apparently contends:

A. Trial court erred in ordering a forfeiture of pornographic materials and pinball machines because:

(1) application (information) for search warrant did not contain a description of property to be seized as required by Code § 751.4;

(2) search warrant did not specify with reasonable certainty the property to be seized as required by art. I, § 8, Iowa Constitution.

B. Trial court erred in ordering a forfeiture of pinball machines because:

(1) they were not illegal devices possessed in violation of the law;

(2) they were not seized "under the warrant" as required by Code § 751.-25.

C. Trial court erred in ordering forfeiture of pornographic materials and gambling devices because the warrant was not issued upon probable cause as required by:

(1) Code § 751.23;

(2) Constitutions of the United States and Iowa.

■ I. An examination of the record reveals assigned error A., *supra,* is raised here for the first time. Therefore, it is not entertained. See State v. Knutson, 220 N.W.2d 575, 579 (Iowa 1974); Zeman v. Canton State Bank, 211 N.W.2d 346, 350 (Iowa 1973).

■ II. Beck's first viable contention is twofold. He thereby initially claims the pinball machines were not subject to forfeiture because they did not constitute gambling equipment as defined by Code § 726.5, which provides:

"No one shall, in any manner or for any purpose whatever, except under proceeding to destroy the same, have, keep, or hold in possession or control any rou-lette wheel, klondyke table, poker table, punchboard, faro, or keno layouts or any other machines used for gambling, or any slot machine or device with an element of chance attending such operation."

But see 1974 Session of the Sixty-Fifth General Assembly, Chapter 1117 and 1973 Session of the Sixty-Fifth General Assembly, Chapter 153, Section 20, both of which were enacted subsequent to any proceedings here involved. See Code § 4.5.

Briefly stated, each device here involved became operable upon a deposit of .15¢ in the money compartment. The depositor then played five balls against a posted score predetermined by the machine. In event the depositor obtained a score in excess of that posted, he or she won a free game.

With regard to the foregoing, this testimony was adduced in course of the forfeiture hearing:

"Q. [County Attorney]: They were all five-ball machines? A. [Beck]: Yes, sir.

"Q. You played them against the score. In other words,— A. Yes, that's right.

"Q.. What about after you get a certain score? A. You would get a game.

"Q. You would get a free game? A. Yes."

When previously called upon to construe Code § 726.5, quoted *supra,* we held pinball machines which gave a winning player additional balls to shoot or a free game were gambling devices. See State ex rel. Harman v. John Doe, 255 Iowa 814, 123 N.W.2d 400 (1963); State v. John Doe, 242 Iowa 458, 46 N.W.2d 541 (1951); State v. Wiley, 232 Iowa 443, 3 N.W.2d 620 (1942). See also People v. Antonelli, 34 Misc.2d 159, 228 N.Y.S.2d 492, aff'd 17 A.D.2d 1033, 235 N.Y. S.2d 101 (1962); 38 Am.Jur.2d, Gambling, § 91; Annot., 89 A.L.R.2d 815.

Under the above statutory definition these pinball machines qualified as gambling devices.

Neither is Beck's claim to the effect these machines were inoperable and under repair when seized of any force or effect. See State v. John Doe, 242 Iowa at 462, 46 N.W.2d 541; 14 Console Type Slot Machines v. Commonwealth, 273 S.W.2d 582, 583 (Ky. 1954). In brief, Code § 726.5 proscribes possession of any gambling device, except under proceedings for the destruction of same.

■ III. With regard to the second phase of Beck's present assignment, he supportively alludes to Code § 751.25 which says:

"If the magistrate finds that the property or any part thereof *seized under the search warrant* is of the illegal nature or character alleged in the information, he shall enter judgment of forfeiture * *." (Emphasis supplied).

Beck maintains that since pornographic material alone was referred to in the warrant, there could be no forfeiture of the pinball machines additionally obtained because they were not technically "seized under the search warrant."

A statutory counterpart to § 751.25, quoted above, is § 751.36 which thus explicitly authorizes forfeiture of property not seized under a warrant:

"When any officer in the execution of a search warrant shall find any * * * *other things for which a search warrant is allowed by this chapter,* all the property and things so seized * * * may be destroyed * * *." (Emphasis supplied).

In light of § 751.36 we conclude the foregoing contention is without merit.

IV. The broad question next to be resolved is whether relevant constitutional safeguards preclude forfeiture by the State of any and all personalty seized.

Beck argues the Fourth Amendment to the United States Constitution and art. I, § 8 of the Iowa Constitution mandate a showing of "probable cause" as a requisite to the seizure upon which any forfeiture may rest.

We are resultantly urged to find trial court erroneously concluded the search warrant issued on probable cause. For reasons later disclosed we are satisfied the warrant was not premised on probable cause. But that alone is not dispositive.

■ It should be first noted the matter of personalty seized for evidential use in the prosecution of a criminal action is not here involved. On the contrary, this is a quasi-criminal proceeding in rem. See United States v. United States Coin and Currency, 401 U.S. 715, 718–719, 91 S.Ct. 1041, 1043, 28 L.Ed.2d 434 (1971); One 1958 Plymouth Sedan v. Commonwealth of Pa., 380 U.S. 693, 697–698, 85 S.Ct. 1246, 1249, 14 L.Ed.2d 170 (1965); United States v. Jeffers, 342 U.S. 48, 52–54, 72 S.Ct. 93, 96, 96 L.Ed. 59 (1951); United States v. $1,058.00 in United States Currency, 323 F.2d 211, 213 (3d Cir. 1963); State v. Kaufman, 201 N.W.2d 722, 723–724 (Iowa 1972).

■ In resolving Beck's present blanket contention a line of demarcation must be drawn between the types of property sought to be forfeited. With regard to the pornographic materials, they are at best derivative contraband and mere personal possession is not unlawful per se. See One 1958 Plymouth Sedan v. Commonwealth of Pa., 380 U.S. at 699, 85 S.Ct. at 1250; McKeehan v. United States, 438 F.2d 739, 743–744 (6th Cir. 1971); Melendez v. Shultz, 356 F.Supp. 1205, 1210–1211 (D.Mass.1973). See also United States v. Orito, 413 U.S. 139, 93 S.Ct. 2674, 2677, 37 L.Ed.2d 513 (1973); Stanley v. Georgia, 394 U.S. 557, 564–567, 89 S.Ct. 1243, 1247–1249, 22 L.Ed.2d 542 (1969); 68 Am.Jur.2d, Searches and Seizures, § 117; Code chapter 725. See also 1974 Session of the Sixty-Fifth General Assembly, Chapter 1267.

■ Distinguishably, the pinball machines were illegal per se when seized and mere possession thereof was sufficient to justify the imposition of penal sanctions. See Commonwealth v. Altizer, 213 Pa.Su-

per. 201, 245 A.2d 692, 693–694 (1968); State v. McGraw, 191 Iowa 1090, 1094, 183 N.W. 593 (1921). See also Code § 726.5.

Based on the aforesaid distinctions other courts have held the constitutional prohibitions above cited do not stand as an impediment to the forfeiture of personalty the possession of which is alone illegal per se, regardless of the means by which it was obtained. See United States v. Jeffers, 342 U.S. at 54, 72 S.Ct. at 96; Trupiano v. United States, 334 U.S. 699, 710, 68 S.Ct. 1229, 1235, 92 L.Ed. 1663 (1948); State v. Voshart, 39 Wis.2d 419, 159 N.W.2d 1, 8 (1968); State v. Keeler, 205 Wis. 175, 236 N.W. 561, 563–564 (1931). See generally Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 528–529, 29 L.Ed. 746 (1886); John Bacall Imports, Ltd. v. United States, 412 F.2d 586, 588 (9th Cir. 1969); United States v. $1,058.00 in United States Currency, 323 F.2d at 212–213; Weathersbee v. United States, 263 F.2d 324, 326–327 (4th Cir. 1958); United States v. One 1956 Ford Tudor Sedan, 253 F.2d 725, 727 (4th Cir. 1958); Sanders v. United States, 201 F.2d 158 (5th Cir. 1953); Farley v. $168,400.97, 55 N.J. 31, 259 A.2d 201, 210–211 (1969). But see Warden, Maryland Penitentiary v. Hayden, 387 U.S. 294, 304, 87 S.Ct. 1642, 1648–1649, 18 L.Ed.2d 782 (1967).

The above view is apparently premised, in part, upon the generally accepted theory a possessor can have no recognized legal right, title or interest in contraband. See United States v. Jeffers, 342 U.S. at 52–53, 72 S.Ct. at 96; Commonwealth v. One 1958 Plymouth Sedan, 414 Pa. 540, 201 A.2d 427, 431 (1964); State v. Four Bell Fruit Gum Slot Machines, 196 Okl. 44, 162 P.2d 539, 540 (1945). It is also sometimes based upon the oft expressed concept that return of contraband in the possession of public officials "would clearly frustrate the express public policy against possession of such objects." See One 1958 Plymouth Sedan v. Commonwealth of Pa., *supra*; United States v. Jeffers, 342 U.S. at 53–54, 72 S.Ct. at 96. See also State v. Four Bell Fruit Gum Slot Machines, 162 P.2d at 540–541; 68 Am. Jur.2d, Searches and Seizures, § 117; 79 C.J.S. Searches and Seizures § 92.

█ We neither express any view as to the above holding nor do we rest our decision thereon. Here the pinball devices were visibly accessible on the business portion of Beck's property which was open to the public when the officers entered same. This means the officers were in a place where they had a lawful right to be. Consequently, seizure of said gambling devices was proper absent probable cause for issuance of the warrant and violated no Fourth Amendment proscription. See Harris v. United States, 390 U.S. 234, 236, 88 S.Ct. 992, 993, 19 L.Ed.2d 1067 (1968); United States v. Myers, 219 F.Supp. 908, 910 (E.D. Pa.1963); Application of Zerga, 218 F.Supp. 759, 761 (S.D.N.Y.1963); State v. Davenport, 516 P.2d 65, 72 (Hawaii 1973); State v. Blood, 190 Kan. 812, 378 P.2d 548, 554–555 (1963); cf. State v. Levy, 160 N.W.2d 460, 468–469 (Iowa 1968); State v. Wesson, 260 Iowa 781, 784–785, 150 N.W.2d 284 (1967).

By virtue of the foregoing, Beck's constitutionally based assignment of error as to forfeiture of the pinball machines is devoid of substance.

V. It is further claimed the pinball machines were not subject to forfeiture because of a statute-related defect in the seizure thereof.

In support of this assignment Beck relies on Code § 751.23 for the proposition that absent the statutorily required showing of probable cause to support issuance of the search warrant, there could be no forfeiture.

Code § 751.23 states:

"If it appears * * * there is no probable cause for believing the existence of the grounds on which the warrant was issued, the magistrate shall cause it to be restored to the person from whom it was taken."

Beck contends any and all property seized, whether or not capable of being lawfully possessed, was exempt from forfeiture unless probable cause supported its seizure. Otherwise, it is apparently urged, there would be no purpose for expressly authorizing restoration of property to an owner where the same was secured absent probable cause.

Noticeably, this claim parallels the constitutional argument previously considered. As presented, the involved controversy centers upon the effect which the "probable cause" requirement of § 751.23 has on § 751.25 and § 751.36, all quoted, *supra*.

▮▮ Forfeiture enactments, like other statutes, are construed with a view to promote their purpose. See State v. One Certain Conveyance, 1971 Honda 350, etc., 211 N.W.2d 297, 299 (Iowa 1973). Although this court noted in State v. Kaufman, 201 N.W.2d at 723 the forfeiture provisions of chapter 751 must be strictly construed, it does not follow we are precluded from giving the involved enactment a meaning in harmony with legislative intent and purpose. See 3 Sutherland, Statutory Construction, § 59.06 (4th ed. 1974).

As previously noted, these gambling machines were illegal per se when seized and mere possession thereof was sufficient to justify the imposition of penal sanctions. See Code §§ 726.4, 726.5.

▮ It is evident § 751.23 must be so interpreted as to require restoration of only that property which is not by its very nature illegal where there is an absence of probable cause for issuance of the search warrant or where such property is otherwise unlawfully seized. A holding to the contrary would (1) require the anomalous return of contraband which, by reason of its nature, could not be lawfully possessed; (2) accord unjustified weight to § 751.23; (3) negate legislative intent; and (4) nullify §§ 751.25, 751.36.

Trial court did not err in ordering a forfeiture of the gambling machines. To that extent we affirm.

VI. Finally, with regard to the alleged pornographic material Beck attacks the forfeiture of same, again upon the constitutional and statutory "probable cause" requirement. In view of our holding, *infra,* we need not consider the statute-related argument here advanced.

As aforesaid, such materials were derivative contraband and possession thereof was not unlawful per se. Therefore, as Beck maintains, the seizure upon which forfeiture was predicated must have been supported by probable cause. See One 1958 Plymouth Sedan v. Commonwealth of Pa., 380 U.S. at 702, 85 S.Ct. at 1251–1252; 68 Am.Jur.2d, Searches and Seizures, § 117.

▮ Turning now to specifics of the matter it is asserted the affidavit in support of the warrant application contains no information, other than mere conclusions, upon which the judge could have effected an independent determination as to whether the generally described pornographic materials were either being used or possessed with intent to use them unlawfully. See Code §§ 725.4–725.6, 725.8. We agree.

The supportive affidavit states, in part: "I do now have reason to believe that the * * * pictures and films have been used as a means of accomplishing a public offense." The remainder of said affidavit merely lists claimed pornographic materials allegedly in Beck's possession.

It is apparent the affiant's bare conclusions or belief did not suffice to support a finding of probable cause. See State v. Spier, 173 N.W.2d 854, 858–862 (Iowa 1970), and citations. See also State v. Boer, 224 N.W.2d 217, 219 (Iowa 1974); State v. Simmons, 195 N.W.2d 723, 725–726 (Iowa 1972).

Moreover, no factually supportive evidence was presented to the judge prior to issuance of the questioned search warrant. See State v. Spier, 173 N.W.2d at 862–863.

It therefore follows trial court erred in ordering a forfeiture of the claimed pornographic materials found on the residential portion of Beck's premises.

As to this element of the case we reverse.

Costs are taxed one-half to the State, one-half to appellant Everett Beck. See People v. One 1950 Ford Sedan, 140 Cal. App.2d 647, 295 P.2d 486, 487 (1956); Court rule 23.

Affirmed in part, reversed in part.